THE SOUTHERN LIFE INSURANCE AND TRUST COMPANY, AND THE STATE OF FLORIDA, PLAINTIFFS AND APPELLANTS, AND CHARLES COLE, RESPONDENT.

An Appeal in Equity is substantially a re-hearing of the cause, and the appeal opens the whole case to the Respondent;—and although the Appellant may show that the view taken by the Court below is erroneous, yet the Respondent is at liberty to show, if he can, that upon the whole case, no other decision can be rightfully made of the case in the Appellate Court.

The act of February 10th, 1832, gives authority to the Appellate Court to pronounce "such judgment, sentence or decree, as the Court below ought to have given." This power could never be exercised, if the Court had not the right to look into the whole case as it is presented in the Record.

But though this Court will re-examine questions decided against the Respondent, as well as such as passed *sub silentio,* or consider points made here for the first time, if raised by the pleadings and proofs, yet care must be taken that neither party be permitted to surprise or mislead his adversary, or to make objections which, if made in the Court below, might have been obviated.

It is well settled that the members or shareholders of corporations created for private emolument, are not admissible as witnesses for such corporations on account of their direct and certain interest. The liability of the company for costs, is a sufficient interest to render a shareholder incompetent as a witness.

Time in a Court of Equity is rarely considered as material where the value of the property contracted for and the circumstances of the parties remain unchanged, but performance will not be decreed where time has elapsed and an important change in respect to value or circumstances has taken place. In sales of stock in the public funds, time is of the essence of the contract; and, in all cases where time is material, or of the essence of the contract, the rule in equity is the same as at law—that is, if the contract is not carried into ef-

fect within a reasonable time, by the vendor or the purchaser, it is deemed to be dissolved or abandoned by mutual consent.

Where several acts are to be done, and a contract is entered into for their performance, the execution and performance of one act depending upon, and constituting the consideration for the execution and performance of another —or where there is a variety of instruments forming one transaction, the law will not give effect to any one act, or any one instrument, unless the whole transaction is completed.

Delivery of a deed is a matter in *pais*, and though the possession of a deed by the grantee is *prima facie* evidence of delivery, yet the circumstances under which the grantee became so possessed, may be shown even in a Court of law so as to avoid the effect of delivery. The delivery of a deed to an officer or servant of a corporation, is delivery to the corporation itself, provided it is for the use and benefit of the corporation, and with intent to pass an absolute property or interest. But there is no such personal identity between a corporation and its officers as to prevent or preclude a delivery to the latter as an *Escrow*, to take effect upon the performance of some condition. Nor is it necessary or material that there should be any formal notification of its delivery as an *Escrow*. Under the 24th section of the act of November 23, 1828, in an action at law a plea of want of consideration put in under oath, throws the burden of proof of consideration on the plaintiff;—and such by analogy is the rule in equity.

The Statute of Frauds of this State is more comprehensive than the British Statute; for though shares of stock have been held not to be "*goods, wares and merchandise*," within the meaning of the act of 29th, Charles 2d, ch. 3, the statute of this State uses the words "personal property" as well as the words "goods, wares and merchandise," and there can be no doubt that shares of stock in an incorporated company are included within the very comprehensive terms, "personal property."

Where there is no consideration of benefit or advantage to the grantor in a deed or of detriment to the grantee, it is *nudum pactum*, and must be so declared by a Court when such want of consideration is made manifest.

Appeal from a decree of the Circuit Court of the County of Leon, made the 5th day of August, 1850.

A bill was filed by Appellants in February, 1849, to foreclose a mortgage made by defendant to the Southern Life Insurance and Trust Company, dated the 20th December, 1841, to secure the payment of $6500, which mortgage was acknowledged by Cole, the respondent, to be his act

and deed, for the purposes therein mentioned, and was duly recorded 24th December, 1841.

After the filing of the bill, and while the suit was pending, the bond and mortgage so executed by the respondent were assigned to Thomas R. McClintock, a judgment creditor of the Southern Life Insurance and Trust Company.

The defence set up to the case made by complainants' bill, was—

1st. That the bond and mortgage were delivered as an *escrow*.

2d. That there was no consideration upon which a Court of Equity could make a decree in favor of complainants.

3d. That there was a total failure of consideration—and that the Southern Life Insurance and Trust Company never performed what it had stipulated to do until long after the execution of said bond and mortgage, and when the stock which was the consideration of their execution was greatly depreciated, if not entirely valueless to respondent —that when an attempt was made, after such lapse of time and under such circumstances, to transfer to Cole $6,500 in shares of stock, he refused to accept, and rescinded the contract, as he had a right to do. These grounds of defence were ably and elaborately argued by the counsel for respondent, and were fully sustained by the Court.

The decree of the Circuit Court from which this appeal was taken, was the following, viz:

" This cause having been submitted to the Court upon the bill, answer, exhibits and proofs, and full argument having been had thereon, and the Court having maturely considered the same, and being of opinion that there is no equity in the said bill for which the same should be sustained; that said bond and mortgage are not valid and binding as between these parties, having been executed for a purpose not consummated nor carried into

effect, and that the same was without any consideration : It is, therefore, decreed and ordered, that the said bill be and the same is hereby dismissed, and that complainants pay to defendant his costs in this behalf expended."

The opinion of the Court is full and clear as to all the points and facts in the case.

The case was argued by *Archer* and *Davis* for Appellants, and by *Long* and *Branch* for Respondent.

THOMPSON, *Justice*, delivered the opinion of the Court.

In the decision of this case, it becomes important *in limine*, to dispose of the question made as to the effect of the appeal—how far it opens the cause to the consideration and judgment of this Court. It is contended on behalf of Appellant, that all questions made by the pleadings and proofs, or which arose in the Court below and which were either decided against the respondent, or passed over *sub silentio*, cannot be urged upon the consideration of this Court by the respondent, unless a cross appeal had been entered by him, founded on the decision adverse to him, or the omission to decide the questions raised.

It is laid down by Mr. Daniel, in his Chancery Practice, that on a re-hearing or appeal, the whole case is open to the respondent ; thus, if the appeal is against the whole decree, it is competent to the Court to modify the decree, by making it more favorable to the respondent. (Vol. 3, 126, 127—Harrisburg Ed.) In Sullivan vs. Jacob, (1 Moll. R. 472,) where a defendant appealed from a decree, on the re-hearing the Court decreed the plaintiff more extensive relief; and in Oldham vs. Stonehouse, (3 Myl. & C. R. 317,) where a plaintiff appealed from a decree which had been pronounced in his favor, with costs, upon the re-hearing, the respondent satisfied the Court that the plain-

tiff was not entitled to any decree, and the decree was reversed and the bill dismissed. See also Rawlins vs. Powel, ( 1 P. Wms., 300,) and Consequa vs. Fanning, (3 Johns. Ch. R. 594–'5.) to the same point. In Beekman vs. Frost, (18 Johns. R., 558,) which was an appeal from the Court of Chancery to the Court of Errors, Spencer, Ch. J. reviews a number of cases on this point, and deduces from them the following principle : That in the appellate Court, no party shall be allowed to surprise or mislead his adversary; that if a party in the Court below shall purposely suffer a decree or judgment to pass against him, by default, without contesting it there, he shall not be heard in the appellate Court, or if counsel shall for the first time raise a point here, which might have been obviated had it been made in the Court below, he ought not to be permitted to do so. So in Watts vs. Waddle, (6 Peters' R. 389,) the Supreme Court of the United States allowed a plaintiff, who appealed from a decree dismissing his bill, to assume in the appellate Court a new ground of relief, not specifically prayed for in the bill, and not asked for in the Court below, saying : " There is no rule of " Court or principle of law which prevents the complain- " ants from assuming a ground in this Court which was' " not suggested in the Court below." And, although the Supreme Court affirmed the decree appealed from, yet they opened it so far as to let in the new relief, and remitted the case that the relief might be given. See also the cases of Kerr vs. Watts, 5 Peters' Cond. R., 179, and Kerr vs. Moon, 5 Peters' Cond. R., 686. There seems to be no distinction taken in the Chancery practice of the English Courts, or in that of New York, between re-hearings and appeals, but both are treated as the same proceeding.

From a careful review of the authorities, we are satisfied that an appeal in equity is substantially a re-hearing

of the cause, and that the appeal opens the whole case to the respondent in the appellate Court; and although the appellant may show that the view taken by the Court below was erroneous, yet on the other hand, the respondent may argue and show, if he can, that upon the whole case, the same result must be attained here. The authority of this Court, by Sec. 5th of the Act of Feb. 10th, 1832, (Thomp. Dig. 449,) is, "to reverse or affirm the "judgment, sentence or decree of the Court below, to "award a new trial in the Court below, or to give such "judgment, sentence or decree as the Court below ought "to have given." It is very clear that the power to give the decree which the Court below ought to have pronounced, could never be exercised if this Court did not possess the right to look into the whole case as it is presented in the record, and to consider it as the Court below should have considered it. We are, therefore, satisfied that we have the right to look into the whole cause, as it is presented in the record, to re-examine questions decided against the respondent, and also such as passed *sub silentio* in the Court below, or to consider points made here for the first time, provided, they are raised by the pleadings and proofs, but adopting, however, for the protection of the parties, the guards laid down by Ch. J. Spencer, in the case before cited, that neither party will be permitted to surprise or mislead his adversary, or to make objections which might have been obviated had they been presented for the consideration of the Court below.

We now proceed to the consideration of the question of the competency of Mr. Robert Lyon as a witness on behalf of the appellants. The respondent, in the Court below, moved that his deposition be suppressed, upon the allegation that he was incompetent, by reason of his inter-

est; which motion was overruled, and the deposition was read at the hearing. The objection is now renewed in this Court, and the counsel for respondent contend that Mr. Lyon, being, according to the proof, at the time of his examination, a share-holder in the corporation, he was so interested as to be incompetent to testify on its behalf; that the assignment to Thomas R. McClintock, previous to his examination, did not make him competent, because such assignment was made pending this suit, which leaves the corporation liable for costs as a party to the record. It is also urged that, nothwithstanding the assignment, there is still an interest in the Company, in the event of this suit, beyond the question of costs, which incapacitates the witness. It is argued that the Company, by the assignment to McClintock, impliedly warrant their title to and the validity of the bond and mortgage, which is the subject matter of the suit and the assignment; that the Company also warrants that it has no knowledge of any facts which, if the instruments were originally valid, would prove them worthless, and therefore the Company, and Mr. Lyon, as one of its members, have an interest in the recovery here, to prevent a recovery over against the Company on the failure of the present suit. That the members or share-holders of corporations created for private emolument, are considered as having a direct, certain and vested interest, and therefore not admissible as witnesses for such corporation, is well settled, upon authority, 1 Greenlf. Ev. 333, and authorities cited in the margin. The Company being a party to this suit upon the record, is undoubtedly liable for costs, and liability for costs, it is also well settled, is a sufficient interest to render a witness incompetent. The Court below should have granted the respondent's motion, and suppressed the deposition of Mr. Lyon, and in the examination of the case here,

it will be excluded from our consideration. As the incompetency of the witness is clear, upon the point considered, we do not express any opinion on the other.

The bill is filed for the foreclosure of a mortgage, which it is alleged, was executed to the Company to secure the payment of a bond for the penal sum of thirteen thousand dollars, conditioned to pay the sum of six thousand, five hundred dollars on or before the expiration of the term of eight years from its date, with legal interest from the 1st day of January, 1841, preceding the date of the bond. The allegation is, that the respondent, on the 20th December, 1841, being indebted to the Southern Life Insurance & Trust Company, did sign, seal and deliver the bond and mortgage described. The answer denies positively any indebtedness on the part of respondent to the Southern Life Insurance & Trust Company, and admitting the signing and sealing of the bond and mortgage exhibited, denies positively that the said instruments were ever delivered to the Company by the said respondent, or by his authority or direction, and proceeds to give the history of the creation of these instruments, and the purposes for which they were executed. It is in substance this : That being desirous to raise a sum of money to meet some urgent necessity, he concluded to become a property stockholder in the said Company, in order to avail himself of the privilege granted to shareholders therein of borrowing two-thirds or three-fifths of the amount of stock ; and accordingly commissioned one N. M. Martin to engage for him as many shares of stock as his property, on appraisement, would cover ; that he was informed by Martin of the engagement to purchase shares of one Thomas J. Linton or one William L. Tooke, he does not recollect which ; that he caused an appraisement of his property to be made, executed the bond and mortgage in question by signing and sealing the

same, and deposited them with the Cashier or officers of the Company, to be delivered to and to become the property of the Company upon the transfer of the shares of stock to him which his agent, Martin, had contracted for. It is further alleged that no shares of stock where transferred to him by Tooke or Linton, until December, 1842, when, after the Company had become embarrassed, &c., and its stock had become worthless and its notes greatly depreciated in value, and after he had expressly declined to receive any transfer for the reasons before stated, the Cashier, Mr. Lyon, procured an assignment to be made on the books of the Company, by William L. Tooke, to the respondent, of sixty-five shares of stock, without the knowledge or assent of the respondent, and which assignment and transfer he never accepted.

The defence set up has been considered in argument as resolved into two points : First, that the bond and mortgage are invalid for want of delivery ; and, secondly, that they are invalid for want of consideration.

It is not pretended that there was, at any time, any loan of money by the Southern Life Insurance & Trust Company to the respondent, nor indeed any transaction whatever, except that which related to the effort by the respondent to acquire stock in the Company. It appears that the appraisement of the property, which he proposed to mortgage as security for the stock amounted to thirteen thousand dollars, and which, according to the rules which the Company had established, would secure sixty-five shares of the nominal value of one hundred dollars per share, and making an aggregate of six thousand, five hundred dollars. The fact from whom the stock was to be procured, is involved in some obscurity. The respondent, in his answer, says that he employed Martin to purchase the shares for him, and that Martin informed him he had done so from

Tooke or from Linton, he cannot distinctly recollect from which of them. Martin, being examined, says, in his deposition, that he ·contracted with Linton, and. not with Tooke, for the stock, and was to allow a premium of ten dollars per share, that it was to be delivered immediately, and that no memorandum in writing was made of the contract. Mr. Tooke, who was also examined on this point, says he never saw the respondent; that, being the holder of one hundred and fifty shares, he had authorized Martin to sell them for him, and that Martin informed him he had contracted to sell sixty-five of the.shares to the respondent. A book is also introduced, called "Bond and Mortgage Ledger," which, if it could be ·considered as evidence, would not serve to dispel the doubt, for, as the book has been explained to the Court by the counsel for appellant, the respondent, Cole, is charged to Linton for the value of sixty-five shares, and Tooke, not Linton, is credited by the same amount under the same date. The book of minutes of the proceedings of the Directors of the Company, is also introduced, in which the following entry appears under date of Monday, December 20, 1841: "Voted to ap-"prove the appraisement of Charles Cole's property to the "amount of thirteen thousand dollars, and upon the com-"pletion of the papers necessary, to authorize the transfer "of sixty-five shares stock from William L. Tooke to "Charles Cole, provided the interest of sixty-five hundred "dollars of Wm. L. Tooke's bond be paid to January 1st, "1841." Upon whose application this order was passed, and from whom the· statement was derived, that it was Tooke's stock which was purchased, does not distinctly appear. This fact might be one of importance, for if the respondent had bought the shares of Linton, it would not authorize the Company to cover the bond and mortgage by procuring an assignment to the respondent from any other

person, without his assent. Martin is the only witness who speaks of his own knowledge, and his testimony.is direct, positive, and affirmative. Tooke derives his information from Martin, and it is but hearsay : so also the statement in the vote of the Directors may have been derived from Tooke or from Martin. The direct and positive testimony of Martin, under oath, may be considered as weakened by the declarations made by him out of doors ; yet if the case turned on this fact, we should feel bound to take the statement of Martin as conclusive upon the point, he being the person best calculated to know the facts; or, if such a course would be admissible, to remit the case to the Court below to take further evidence thereof.

We do not, however, think it necessary to decide the question ; for whether the purchase of the shares was from Linton or from Tooke, they were to be delivered, that is, transferred, immediately, and according to the proof, they were not transferred until nearly twelve months after the execution of the bond and mortgage, and not until after the stock had greatly depreciated in value, arising from the pecuniary embarrassments of the Company.

Time, in a Court of Equity, is rarely considered as material, where the value of the property contracted for and the circumstances of the parties remain unchanged ; yet where the value of the property is greatly diminished, performance will not be compelled. In cases of sales or contracts relating to stock in the public funds, time is considered as of the essence of the contract, Forrest vs. Elwes, 4 Vesey R., 492. There is no proof of the acceptance of the transfer of stock by the respondent, at or after the time of transfer, and we are clearly of the opinion that, upon the contract to transfer and deliver the shares presently, the respondent would not, in a Court of Equity, have been compelled to accept a transfer and delivery

nearly twelve months thereafter, when the stock had greatly depreciated in value, and, as he would not be compelled to complete the contract, he was not bound to accept the transfer when made, but might consider the contract as abandoned. At law, where time is considered material, if the contract is not carried into effect within a reasonable period, either on the part of the vendor or the purchaser, it is deemed to be dissolved and abandoned by mutual consent, and such must be considered the rule in Equity, where, from the express terms of the agreement, or from the nature or character of the subject matter of sale, time would be considered as of the essence of the contract.

It is, however, argued on the part of appellants, that the liability of the respondent to the Company upon the bond and mortgage, does not depend on the fact whether Linton, or Tooke, or any body else, transferred any stock to him.

Either the Court or the counsel greatly misapprehend the terms, nature and force of the contract proved. It seems to us not to be one of much complexity, when rightly understood. Assuming as a fact what we have heretofore held was not satisfactorily proved, that it was Tooke's stock which the respondent was to buy, the transaction is simply this: Tooke held one hundred and fifty shares of the stock of the Company, which had not been paid for with money, but which he had been permitted to subscribe for on credit, securing the payment by his bond for the nominal value, say fifteen thousand dollars, with interest from the date of his subscription, and a mortgage upon property. It was proposed that Tooke should transfer to the respondent sixty-five of those shares, and that the respondent should execute his bond for the nominal value thereof and interest, secured by a mortgage upon his property, and when the transfer was made, and the bond and mortgage

of respondent accepted by the Company, Tooke would be entitled to a release from the Company of so much of his bond and mortgage as that of the respondent would cover. These were all concurrent and dependent acts—integral parts of one contract, which must all be executed, in order to give validity to any one of them. They must be performed, too, in conformity with the agreement and with good faith. In this arrangement, the Company was not only one of the parties to the compact, but it had an important interest—it was to release to one of the parties a sum of money due it on his bond and mortgage, and to accept in lieu of it the security of the personal responsibility and property of another. It was not only bound to know and did know all the acts to be performed by each of the contracting parties, but also that the several acts to be performed were dependent upon each other, and were to be executed concurrently.

The evidence of the connection of the Company with, and its participation in the arrangement between Tooke and the respondent, so as to make itself a party to the contract, is found in the order or vote of the Board of Directors, considered in reference thereto.

It is said by one of the counsel for appellants that this order or vote was misconstrued by the Judge below, and which misconstruction led to the erroneous decree complained of. We have examined this entry with great care, and if we would give effect to each and every part of it, we would find it susceptible of but one interpretation. To make ourselves perfectly intelligible, we will eliminate the several parts, and put them as distinct sentences, viz:

" Voted, to approve the appraisement of Charles Cole's " property, to the amount of thirteen thousand dollars ;" and also,

" Voted, upon the completion of the papers necessary to

" authorize the transfer of sixty-five shares of stock from " Wm. L. Tooke to Charles Cole, provided, the interest of " sixty-five hundred dollars of Wm. L. Tooke's bond be " paid to January 1st, 1841."

To give the construction contended for by counsel for appellants, is to render insensible and wholly useless the words, " and upon the completion of the papers necessary," while our construction not only gives effect to every word, but is consistent with the intentions of the parties, as they are gathered from their acts, conduct and declarations, considered with reference to the parol proofs of the agreement.

For the purpose of the performance of the agreement, the abstract of respondent's titles were laid before counsel in whose opinion the Company had confidence, and the report thereon was accepted, and the respondent had executed his bond and mortgage. Yet there was wanting to the complete consummation of the contract and agreement of the parties, the transfer on the books of the Company, by Tooke, to the respondent, of the sixty-five shares of the stock, according to the terms of the said agreement, and the release by the Company to Tooke of the sum of sixty-five hundred dollars, upon his bond and mortgage.

The several acts were to be executed concurrently, and each part would have effect and vitality only from the performance of the others, and the execution or performance of one formed the consideration of the others. The respondent was not bound to deliver his bond and mortgage until Tooke should make the transfer of the shares. Tooke was not bound to execute the transfer until the respondent was in condition to assume Tooke's responsibility to the Company for the nominal value of the shares, and had paid or was ready to pay the premium agreed on.

And the Company was not bound to release Tooke until the respondent was in condition to assume Tooke's liability.

It would ordinarily happen in the execution of such tripartite contracts, that one or the other parts might be executed before the others. Yet the parts so executed cannot on any just principle be regarded as distinct and substantive contracts, against the consent of the parties so performing; but they would be considered as steps taken towards the consummation, the whole being *in fieri* until each and every part was accomplished, for all the parts formed but one whole. In Dutton vs. Morrison, (17 Vesey R., 200,) Lord Eldon says : " In many cases the law " considers a variety of instruments as forming one trans- " action, and would not give effect to any instrument un- " less the whole transaction is completed ;" and this is precisely the case here.

The appellants, however, plant themselves upon an alleged delivery of the deeds to the Southern Life Insurance & Trust Company, its acceptance of them as valid instruments, and an alleged credit to Tooke, as conclusive of their right to the decree of foreclosure prayed for. And first, as to the delivery of the deeds : Delivery of a deed is a matter in *pais*, and there is no doubt that the possession of a deed by the grantee, acknowledged by the grantor for record, is evidence of delivery, but the authorities cited do not make it more than *prima facie* evidence of the fact. It is, even in a Court of law, susceptible of explanation, or rebuttal. The grantor may show that such possession is the result of fraud, mistake or accident, (2 Greenlf. Ev., § 297, and authorities cited in the margin.) But what is the evidence of delivery in the case before us ? On the part of the appellants, there is nothing more than the *prima facie* case made by the possession of the deeds ;—on the part of the respondent, there is the express denial of

the answer, which is responsive, not only to the allegations of the bill, but to the special interrogatory addressed to him. The explanation which he gives as to the manner in which the Company became possessed of the deeds, is perfectly consistent with the contract proved, of which the execution of the deeds was an integral part. The respondent executed the instruments and deposited them with the Cashier, or other officer of the Company, at its office, the place where the execution of the contract was to be finally consummated, so far as the respondent was interested, to wit: the transfer of the shares, which, to be full and perfect, must be made on the books of the corporation, there to be ready for the final completion.

It is said that delivery to an officer or servant of a corporation, is delivery to the corporation. To this we assent, with the addition that such delivery is for the use and benefit of the corporation, and with intent to pass an absolute property or interest in the deed delivered; and the rule would be the same if the delivery should be made to a mere stranger. We do not think there is such a personal identity between the corporation and its officers, that a deed may not be placed in the hands of the latter as an *escrow* until the performance of some condition, &c.

Whether there was any formal notification by words or not, at the time of the deposit or delivery to the officers of the Company, that it was to operate as an *escrow*, is not, it seems, material. In Bowker vs. Burdekin, (11 Mees. & Wels. R., 145,) Parke, B., says: " I take it now to be " settled, though the law was otherwise in ancient times, " as appears by Sheppard's Touchstone, that in order to " constitute the delivery of a writing as an *escrow*, it is " not necessary that it should be done by express words, " but you are to look at all the facts attending the execu- " tion—to all that took place at the time, and to the result

" of the transaction ; and therefore, though it is in form an " absolute delivery, if it can be reasonably inferred that it " was delivered not to take effect as a deed till a certain " condition was performed, it will nevertheless operate as " an *escrow*."

We find no sufficient proof of the delivery of the deeds in question. The presumption of a delivery, as an independent and substantive contract, is repelled, not only by the answer, but by the proofs, of the contract which was in fact made, and of which the deeds were but an integral part : a contract of which the Company had full notice, for it was not an unimportant party thereto.

It must be borne in mind that this Court is now sitting as a Court of Equity, which regards not the circumstances or outward ceremonial, but the substance of the act, and therefore we think that if the respondent had entered the parlor of the Company, the President and Directors being there in session, and by the most formal act had delivered the deeds in question to the head of the Corporation, stating the circumstances under which and to accomplish which they were executed, we should be compelled to regard it as a delivery, to take effect only on the final consummation of the contract.

In Flagg *vs.* Mann, (2 Sumner R. 510,) that learned jurist, Justice Story, says, though there is a technical difficulty in the suggestion of the delivery of the deed to the grantee as an *escrow*, yet a Court of Equity will not govern itself exclusively by technical principles of law, where the intentions of the parties will be thereby defeated. It requires, however, he says, · clear evidence of what that intention is, and whether it will be so defeated, otherwise the rule of law must prevail. · In this case we are perfectly satisfied of the intentions of the parties, and that if the possession of the deeds by the Company be regarded as an

absolute technical delivery, the intention of the party will be frustrated and defeated.

Was the difficulty subsequently obviated by the transfer on the books of the Company, in December, 1842, of sixty-five shares of stock by William L. Tooke to the respondent, and were the officers authorized, on this transfer, to consider the condition as complied with, and the bond and mortgage the property of the Company? We are well satisfied of the negative of both branches of the inquiry.

Assuming again that it was Tooke's stock, and not Linton's, which the respondent had agreed to purchase, and that he got by that transfer the stock which he had actually contracted for, yet, as we have before said, in this contract, from the very nature of the transaction and the subject matter thereof, time was of the very essence of the agreement. After the lapse of nearly twelve months, and after the value of the shares had greatly depreciated, owing to the embarrassments and the threatened insolvency of the Company, which finally ensued, it was too late to require the acceptance of the transfer by the respondent, and there is not a tittle of proof that he did accept it.

The circumstances under which the assignment was made are not wholly free from suspicion. No one was present but Tooke, who made the transfer, and the officers of the Company. The respondent was not notified and required to attend, accept the act of transfer, and consummate the contract.

Martin, who was respondent's agent for the purchase, had a store and was in business at Tallahassee, where the transfer was made, was not notified to attend and represent his principal. Martin says, too, he agreed that the respondent should pay a premium of ten per centum, or ten dollars per share, for the stock, yet we find no demand made for this premium, but the claim for it is quietly abandoned.

Under this state of facts, it is asking too much of a Court of conscience to consider this act of transfer as rightly done, and obligatory on the respondent. If the appellants would avoid the effect of the lapse of time, they were bound to show that no injury resulted to the respondent from the delay, and that the value of the shares of stock remained unchanged. The proof, however, is full the other way.

We come now to the question of consideration. The respondent, in his answer, alleges that the bond and mortgage is also invalid for want of consideration. At law, under the 24th section of the act of November 23, 1828, regulating judicial proceedings, (Thompson's Digest, 331, chapter 2, section 1, article 4,) a plea of want of consideration, put in under oath, throws the burden of proof on the plaintiff of showing a consideration; and such by analogy we consider the rule here, the existence of a consideration being denied in the answer, which is under oath. It is contended, on behalf of the appellants, that the consideration is not to proceed from the Company, that it did not contract to sell any stock or shares to the respondent, neither did it guarantee that Linton or Tooke, or any body else, would do so. This is true, and yet the deeds must be founded on a sufficient consideration, or else they are *nuda pacta*, and nullities.

The officers of the Company must be presumed to know that, to make the deeds valid securities in the possession of the Company, they must be founded on such consideration, and it was therefore their duty to see that the consideration passed from and to the proper parties, and this upon the tri-partite contract before mentioned.

It is urged upon us here that, by the agreement and by the execution of the bond and mortgage in question, the respondent obtained a right to demand the transfer of the

shares from Tooke, and that this right of action is a sufficient consideration to support the deeds in the possession of the Company ; and, on the other hand, it is argued that no such right of action existed, because the contract or agreement is within the 11th section of the act of November 15th, 1828, regulating the conveyance of real and personal property, &c., (Duval's Compilation, 206. Thompson's Digest, 218, § 2.) It is true that the English Courts, in the construction of the 17th section of the act of the 29th Chas. 2, Ch. 3, have held that shares of stock in an incorporated company, are not goods, wares, or merchandise within the meaning of the act, yet we consider that our statute is more comprehensive than the British statute of Frauds.

Our statute provides, " that no contract for the sale of " any personal property, goods, wares, or merchandise, " shall be good, unless the buyer shall accept the goods or " part of them so sold, and actually receive the same, or " give something in earnest to bind the bargain, or in part " payment, or some note or memorandum in writing of the " said bargain or contract be made and signed by the par- " ties to be charged, or their agents thereunto lawfully au- " thorized."

It will be observed that our statute uses the words personal property, as well as goods, wares and merchandise, and therefore, though shares of stock in an incorporated Company may not properly be considered as goods, wares or merchandise, yet there can be no question but that they are included within the very comprehensive terms, " personal property." Was anything done to take the agreement without the statute ? There was no acceptance and actual receipt of the thing sold, or any part thereof by the buyer ; nothing given in earnest to bind the bargain, or in part payment, and no written memorandum of the bargain or contract signed by the parties to be

charged or their lawful agents. The execution of the bond and mortgage by the respondent, could not have the effect of a part payment, to take the case without the statute, if at all, until delivery and acceptance by the Company with the express assent of Tooke. Payment or part payment, pre-supposes the act of two persons, the bargainee to give and the bargainor to accept, and until it is both given and accepted, the contract is not complete. We think that the respondent had no right of action against Tooke upon the parol contract for the stock, but if he had acquired such right of action, it did not amount to a sufficient consideration to support the deeds, for the respondent did not propose to buy a law suit, but to buy shares of stock.

Again it is argued, that equitably, the shares of stock belonged to the respondent, as soon as the' Company approved of the bond and mortgage, which the respondent had executed; and this upon authority of the maxim, that equity regards that as done, which ought to be done. If to the maxim as stated be added this qualification, "where "nothing has intervened which ought to prevent a perform-"ance," we are prepared to yield our assent to the existence of such a rule of equity law, but we deny its applicability to the present case. It has never been so applied as to make a party who has contracted for legal title to property, on payment of the purchase money, liable at all events to pay the price, as upon a contract executed, before conveyance is made, merely because the vendor ought to have conveyed: Nor has any case occurred where it has been held that an executory contract invalid as being within the positive prohibition of a statute, ought, in a Court of equity, to be considered as executed.

We are well satisfied that there was no benefit or advantage resulting to the respondent, as a sufficient consideration to support the deeds in question. Let us now exam-

13

ine and see if any detriment or injury resulted to the Company, which will support the deeds as a consideration.

It is alleged that the Company released to Tooke the sum of six thousand five hundred dollars, with interest from the 1st of January, 1841, at eight per centum, in consideration of the bond and mortgage executed by the respondent. The only evidence produced, and which is now before us, to sustain this allegation, is that said to be afforded by a book, styled "Bond and Mortgage Ledger," which we have before adverted to, and which we will now consider more fully. This book, it is admitted, is not a part of the regular sett of account books of the Company, but it is a memorandum book, kept by the Cashier for the purpose of readily ascertaining the amount of principal and interest due the Company upon its bonds and mortgages. It is not shown to have been opened and kept by any order of the Board of Directors, nor is the period when the book was first opened ascertained with any degree of certainty. It is also admitted that as the entries therein consist simply of names, dates and figures, without any descriptive explanations, it is not intelligible, save by the personal explanations of the Cashier of the Company. The book therefore, cannot, be considered as an account book, the entries in which would be evidence against the Company as admissions, but must be considered simply as memoranda of the Cashier, and of no higher authority than statements made by him not under oath. In a suit between the Company and Tooke, this book could scarcely be held, under the circumstances, evidence against the Company of the release of six thousand five hundred dollars on his bond of the date of July 1st, 1841. The entry in this book, however, of the debit of the respondent, and the credit of Tooke, bears date January 1, 1842, when the stock was not actually transferred until the month of December of that year. If the

Company considered that Tooke was entitled to the credit of the amount of respondent's bond and mortgage on the 1st of January, 1842, why was not the amount endorsed upon Tooke's bond, which was then in the possession of the Company? Was it just to Tooke or Lahens & Co., subsequently to transfer it to the latter parties, without an endorsement of the credit? If the respondent became liable to the Bank for the sixty-five shares of stock on that day, surely Tooke became entitled to be discharged to the amount of the nominal value of shares, and if so, to a release or acquittance therefor; to some evidence which he might keep in his own possession. No credit was endorsed upon the bond and mortgage of Tooke when it went in the possession of Lahens, and none was entered while it remained in his possession and that of his attorneys, which continued up to final settlement by compromise in 1847, and when that compromise is adjusted, a release is executed for the whole sum secured by the said instrument, and no mention is made of the credits by Cole. Did the omission to endorse the credit upon the bond of Tooke, at the time of its transfer, result from the fact that it would be premature, the shares not having been transferred to respondent? If so, then the entry in the book is clearly not an evidence of release, if there was no other objection. If this supposition is correct, why did not the Company in December, 1842, upon the transfer of the shares by Tooke, notify Lahens & Co., and ask them to accept the respondent's bond and mortgage, and credit Tooke's which was in their possession? Tooke's action is equally as inexplicable as that of the Company. In December, 1842, he transfers sixty-five shares of his stock to the respondent, from which he expects a credit to the amount of their nominal value, and yet receives no acquittance therefor—it does not appear that he demanded any. So, although, according

to the testimony of Martin, the respondent was to pay a premium of ten per centum or ten dollars per share for the stock to the vendor, we do not find Mr. Tooke, on the occasion of the transfer or at any time since, making any claim therefor. Conduct and action so much out of the usual course of business, require explanation, and yet none is offered. It is very clear that the Company was not bound to release Tooke until the respondent had irrevocably assumed the payment of the sum stipulated, to their satisfaction, and as we find no evidence of release to Tooke, founded on the consideration of respondent's bond and mortgage, we are bound to conclude it did not release him. We find no consideration of benefit or advantage to the grantor, or of detriment to the grantee, to support these deeds, and must declare them *nuda pacta*. We have examined carefully every position assumed by the appellant's counsel in the argument here, and whether we consider the deeds upon the question of their delivery, or that of a want of consideration, they are equally invalid in the possession of the Company or of its assignee.

Our judgment is that the decree of the Court below be affirmed, with costs.

SEMMES, *Justice*, dissented.