415 So.2d 137 (1982)
Bruce HENRY and Eleanor Henry, His Wife, Appellants,
v.
Charles T. ECKER and Anna Ecker, His Wife, Appellees.
No. 81-1245.
District Court of Appeal of Florida, Fifth District.
June 16, 1982.
*139 Louis Ossinsky, Jr., of Ossinsky, Krol & Hess, Daytona Beach, and Clark & Mussoline, Palatka, for appellants.
William L. Townsend, Jr. and Albert W. Whitaker of Walton & Townsend, Palatka, for appellees.
COWART, Judge.
This case involves specific performance of a contract for the sale and purchase of real property.
Appellees, as sellers, and appellants, as buyers, entered into a written contract for the sale and purchase of a parcel of land for $70,000, payable $2,000 as a deposit, $28,000 at closing and the balance of $40,000 to be secured by a purchase money mortgage. The contract provided that the transaction would be closed by July 2, 1980, but no provision made time of the essence. The contract made no provision for the buyers taking possession prior to closing, but the buyers took possession under the contract with permission of, or at least without protest from, the sellers. One lawyer undertook to represent both parties, but because he had been notified of a potential claim against the sellers for a real estate commission, the lawyer declined to accept and hold in escrow the buyers' $28,000 and directed the buyers to deposit those funds with another law firm. On July 2, 1980, the parties disputed, with the buyers claiming that the sellers had wrongfully removed an ornamental fireplace mantle contrary to the written agreement, which provided that the sellers had the right to retrieve the mantle, the title to which they retained, only after the buyers remodeled the fireplace. There was also some dispute as to whether one or two lawnmowers were included in the deal. The buyers wanted $2,000 of the purchase money held in escrow pending resolution of these matters, but the sellers would not agree and no closing occurred. Later, the sellers executed a deed and left it in escrow with the attorney and authorized him to close with a $2,000 reduction in the sale price. Nevertheless, when the buyers and the attorney later met (probably July 18, 1980) and attempted to close, the buyers felt that it was the sellers' fault that the transaction had not closed on July 2, 1980, and therefore that interest on the deferred portion of the purchase price should commence from the date of the delayed closing and, further, that the sellers should pay $100 in attorney's fees that the other law firm had charged as a fee relating to the escrow of the buyers' down payment money. Again, no closing occurred. Thereafter, the sellers demanded possession and filed an action for unlawful entry and unlawful detention (detainer). The buyers counterclaimed for specific performance. The trial court denied specific performance on the grounds that the buyers did not have clean hands because the transaction had not closed on July 2 as a result of the buyers' objections and questions about the fireplace mantle and the lawnmowers and the transaction had not closed on the second attempt because of the buyers' position with reference to the commencement date of mortgage payments, interest on the deferred portion of the purchase price and the $100 of attorney's fees.
While the contract was poorly drawn on a poor form, all parties consider it adequate, legal and binding. Both parties, while contentious, basically acted in good faith to close their transaction, but they needed help that they did not have. Performance of the contract by execution of the necessary documents at a closing should have occurred and it still can. The buyers have now been in possession of the property for over a year and a half and there is no way for this controversy to be concluded fairly to both *140 parties except for a court of equity to direct specific performance of the contract with the necessary equitable adjustments.
First, the fact that the two efforts to close this transaction failed does not necessarily mean that either party breached the agreement or was guilty of unclean hands. Failure to close at any one time does not amount to unclean hands; that equitable doctrine was not intended as a penalty to deprive a party of the benefits of a contract merely because they are not agreeable at a closing. Closings of real estate transactions are fraught with potential for disagreements as to details and personality conflicts and emotionally induced positions are common. Equity, like a good real estate closing attorney, should assume that a basically fair and equitable agreement should be performed by the parties and should steadfastly press forward, patiently resolving differences and parrying all personality and other petty matters that threaten attainment of the goal of full good faith performance by all parties.
Time is not of the essence in contracts for the sale and purchase of real estate unless the contract so provides. See Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756 (1894); Southern Life Ins. and Trust Co. v. Cole, 4 Fla. 359 (1852); Fretwell v. Crisafulli, 185 So.2d 504 (Fla. 4th DCA 1966). When a contract for the sale and purchase of land does not make time of the essence as it relates to closing, a party can breach that contract only by refusing to perform after demand that a closing take place at a reasonable time and place. In this case, the buyers did not refuse to perform after a demand for performance by refusing to close at a given reasonable time and place. In Florida, ejectment proceedings will not lie against even a defaulting vendee who enters the property under an executory contract for purchase until such time as the vendor gives notice of rescission because of the default and allows the vendee a reasonable time to perform obligations under the contract. Wismer v. Alyea, 103 Fla. 1102, 138 So. 763 (1932); South Florida Farm Co. v. Hall, 84 Fla. 233, 93 So. 687 (1922).
A contract of purchase and sale, being preliminary to the sale and not the sale itself and also subject to rescission by agreement between the parties, is an executory contract, the two promises of which are mutually dependent and conditional requiring concurrent performance. Since all land is considered unique, money damages to a contract purchaser of lands is an inadequate remedy at law. Therefore, specific performance of contracts for the sale and purchase of real property is generally granted as a matter of right where their terms are fair, certain and definite and they have been entered into without misunderstanding or misrepresentation.
The "clean hands" maxim and the equitable principle for which it stands signify that a litigant may be denied affirmative equitable relief by a court of equity on the ground that his conduct has been inequitable, unfair, dishonest, fraudulent or deceitful as to the controversy in issue. This maxim refers to the acceptability, cleanliness and decency of the claim put forth and describes equity's practice of refusing an equitable remedy to enforce a claim that is itself inequitable, unconscionable or tainted by fraud or misrepresentation. Disputes between parties at real estate closings such as in this case do not constitute the kinds of acts or conduct within the basic rationale and purpose of this equitable maxim and the maxim should not be invoked to deny an equitable remedy to one who seeks the enforcement of the legal right to compel a party to a contract to do that which was in the contemplation of the parties as expressed in their contract. Equity ought to require doing that which should have been done. While there is some difference in purpose between the usual executory contract for the sale and purchase of land and the long term contract for deed discussed in Cain and Bultman, Inc. v. Miss Sam, Inc., 409 So.2d 114 (Fla. 5th DCA 1982), viewed as to the interests and legal rights of the vendee, there is little, if any, theoretical difference, especially insofar as the buyer under both types of agreements acquires an interest in the *141 land which is the subject matter of the contract. Buyers under both forms of agreement are equally entitled to specific performance to have a court of equity require the seller to specifically perform the agreement and to convey the legal title to the purchaser as contemplated by the agreement. This legally enforceable contractual right to receive legal title to the land is sometimes called an equitable title. Such an equitable title means the right in equity to acquire the legal title by an action for specific performance. We recognize that, as a practical matter, the equitable title of such a purchaser who is not in actual possession of the land and whose contract rights are not a matter of public record giving constructive notice is ineffectual and unavailing as against a good faith purchaser from the record titleholder.[1] Nevertheless, as between the parties, when no rights of a third party are involved, such equitable title and interest in the land should not be summarily terminated as forfeited, nor should it be adjudicated in a possessory action at law, but should be terminated only by an action in equity, in which action the purchaser, even one who has defaulted, is always judicially given one last fair equitable opportunity to redeem his right in equity to a conveyance of the legal title to the property by payment of all sums due and by himself "doing equity" as may be necessary. In fact, the foundation of the "clean hands" maxim is said to be the same as that of the equitable maxim "he who seeks equity must do equity." A court of equity has such authority to effectuate this last maxim by specific performance conditioned upon the contract purchaser making the seller whole, that specific performance may be granted in many cases where it would otherwise be denied. In this particular case, equity can best be served by giving the buyer a court sponsored opportunity to pay all principal sums which the buyers should have paid the sellers to date had the original contract been closed on the original date set in the contract for closing (July 2, 1980), and to assume the deferred installment payments at the point presently due under the contract, as originally agreed, with appropriate contract interest thereon. Failing to so redeem, the buyers can be fairly left to face the legal damages which they would otherwise owe the sellers for their long actual possession of the property in question. Accordingly, final judgment below is reversed and the cause remanded with directions to the court to grant specific performance and to set a short and certain date for the buyers to pay that portion of the original principal sum ($70,000) that would have been paid to that date under the original written contract had the sale evidenced thereby been closed on July 2, 1980, as originally contemplated, but with interest on all such sums not only from July 2, 1980, to their original due date, but also from their original due date to the date of actual payment, all at the rate provided in the contract.
REVERSED AND REMANDED.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] As to a buyer's measure of money damages against a seller who sells to a third party who takes in good faith, see Gassner v. Lockett, 101 So.2d 33 (Fla. 1958), Key v. Alexander, 91 Fla. 975, 108 So. 883 (1926), and Fleck, Vendor and Purchaser: Recovery for Loss of Profits from Contemplated Sale or Use of Land, Where Vendor Fails or Refuses to Convey, 56 Fla.B.J. 453 (1982).