In re SECTION 20 LAND GROUP, LTD., Eagle Dev. Co. of Southwest Fl., Inc., Twineagles Development Co., Ltd., Twineagles Golf & Country Club, Inc., V.V.V. Holding Company, Inc. Twineagles Land Group I, LLC, Talon Land Group, Ltd., Debtor

Nos. 99–14697–9P1, 99–14699–9P1, 99–14702–9P1, 99–14703–9P1, 99–14705–9P1, 99–14709–9P1, 99–17249–9P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 5, 2000.

Steven M. Berman, Tampa, FL, for debtor.

Richard Johnston, Jr., Ft. Myers, FL, for MDG.

***ORDER ON APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE FILED BY MDG CAPITAL PARTNERS (Doc. No. 731)***

ALEXANDER L. PASKAY, Bankruptcy Judge.

It is not unusual in a substantial Chapter 11 Reorganization Case that involves an attempt to sell properties of the estate of some substance to have numerous suitors who appear on the scene submitting bids to purchase the subject property. Of course, ultimately some of them will be disappointed and will not end up the successful bidder. What is unusual about this case, however, is that the unsuccessful

bidder seeks allowance as a cost of administration for the expenses it incurred to conduct the due diligence in an effort to proceed and make their bid and ultimately purchase the property.

This is precisely what happened in this case, albeit it has some unique and different features. The Application for Allowance filed by MDG Capital Partners 540, Inc. (MDG) was asserted originally in the amount of $158,000.00 and is based on the contention that the owners of Phase III–A and III–B, TwinEagles Development LTD, Talon Land Group, LTD and James Colosimo, individually and as Trustee, entered into a contract to sell Phase III–A and III–B to MDG on August 4, 1999. The contract for sale provided, *inter alia*, that the transaction shall be closed on August 16, 1999; however, if contingencies in Paragraph 8 of the addendum were not met by August 16, 1999, the closing shall be extended to August 31, 1999. It is without dispute that the sale was never closed and, ultimately, the property described above was sold to another entity.

The administrative claim is based on the time expended by the employees of MDG and attorney's fees for services rendered in connection with MDG's due diligence. All professional services relating to due diligence, including a suit filed in state court for specific performance, were performed prior to commencement of the Chapter 11. All the time spent by employees of MDG in connection with the purchase of the property in due diligence were performed prior to the Chapter 11. There were professional services performed by the attorneys after commencement of the case. However, none of these services related to the matter relating to the purchase and sale. Rather, these services were in connection with the attempt of MDG to block the debtor's request for DIP financing and in connection with the

preparation of the adversary proceeding which was shortly thereafter dismissed with prejudice based on the stipulation of parties. When the Debtor did not proceed with the sale of the properties to MDG, on January 12, 2000, MDG filed an adversary proceeding and sought specific performance of the contract for sale entered into on August 4, 1999, or prior to the commencement of the case. The Complaint was attacked by the Defendants and ultimately was dismissed based on a stipulation of the parties pursuant to which MDG agreed to a dismissal, with prejudice, provided that MDG could file an application for administrative allowance. The stipulation further provided that MDG's claim shall not exceed $100,000.00.

As noted earlier, all the time spent in connection with MDG's due diligence occurred prepetition and the efforts towards due diligence were performed solely on behalf of or for the benefit of MDG, and not for the benefit of the Debtors. To overcome the obvious, MDG posits a novel proposition which is based on the contention that under the applicable law of the State of Florida, when MDG and the Debtors executed a contract for sale that, based on the doctrine of equitable conversion, MDG in fact became the owner of the land involved and, as a consequence, the Debtor's title was only a bare legal title. Therefore, by virtue of 11 U.S.C. § 541(d), the land in question was no longer property of the estate on the date of the commencement of the case.

MDG realizing, as it must, that before its claim can be recognized as an administrative claim, it was essential to confer benefit on the estate. In support of the Doctrine of Equitable Conversion, MDG cites *Cain & Bultman, Inc. v. Miss Sam, Inc.*, 409 So.2d 114 (Fla. 5th DCA 1982). He also cites *Yaist v. United States*, 228 Ct.Cl. 281, 656 F.2d 616 (1981), and *Henry*

*v. Ecker,* 415 So.2d 137 (Fla. 5th DCA 1982).

*Cain & Bultman* and *Yaist,* unlike the present case, actually involved an agreement for deed, which, according to these cases, created an equitable title to the property. In the present instance, there was a contract to purchase and not an agreement for deed. Thus, the reliance of MDG on these two cases is misplaced. The case of *Henry v. Ecker,* in fact, involved the execution of a contract for sale of real estate. The Fifth District Court of Appeals held that the purchaser's legally enforceable contractual right to receive legal title to land is sometimes called an equitable title, and, as a practical matter, the equitable title of such purchaser who is not in actual possession of the land and whose contract rights are not a matter of public record, giving constructive notice is ineffectual and unavailing as against a good-faith purchaser from the record titleholder.

*McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982), also cited by MDG, was decided by the Third Circuit Court of Appeals and did not involve the sale and purchase of Florida land. This Court is not satisfied that the law stated in *McCannon* is persuasive and, while this Court might accept the proposition that the purchaser of the land might have a right to specific performance, this presupposes, however, that there is a valid and live contract which the seller of the property refused to consummate. This record leaves no doubt that this is not the case in the present instance. Even assuming that giving up the right to sue for specific performance is a quantifiable benefit, a proposition this Court is unwilling to accept, it woefully lacks the quality of benefit which would qualify a claim for administrative expense. This is so especially, like in this instance, when the claim is based on expenses relating to the time expended to conduct due diligence by the disappointed buyer prepetition.

In addition, MDG contends that its due diligence assisted the Debtor toward the ultimate sale of the property by the information it discovered during the due diligence regarding certain title problems with the properties involved. MDG also contends that by giving up its claim of equitable conversion, it also assisted the reorganization process because the plan of reorganization was ultimately confirmed, and the Debtor could not have achieved confirmation unless the purchase of all the lands involved, including Phase III–A and III–B, were included in the sale. The difficulty with the proposition urged by MDG should be obvious if one considers the contract for sale. As noted, the sale required a closing no later than August 31, 1999. Thus, the most what could be said, even assuming that the failure to close was the fault of the Debtors, was that it was simply nothing more and nothing less than a breach of prepetition contract. It would take a miracle to transform a prepetition breach of contract damage claim into a cost of administration. Unfortunately, no one advised this Court yet of a miracle. And therefore, it is clear that the claim asserted here by MDG cannot be accorded administrative claim status.

This leaves for consideration the right to have allowed a general unsecured claim and, if so, in what amount. This record is insufficient to establish the controlling question, that is who breached this contract. Neither is the amount claimed sufficiently documented to enable one to quantify the amount of the unsecured claim to be allowed if one is ultimately allowed. This being the case, it appears to be necessary to schedule a final evidentiary hearing to receive competent evidence on the issue of the breach and also the amount, if any, which may be allowed as a general unsecured claim.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the administrative claim of MDG be, and the same is hereby, disallowed. It is further

ORDERED, ADJUDGED AND DE-CREED that a pre-trial conference shall be scheduled before the undersigned to determine a date and time in which to hold a final evidentiary hearing to determine what amount, if any, could be allowed as a general unsecured claim in these confirmed Chapter 11 cases, in Courtroom 9A, Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Tampa, Florida, 33602 on December 28, 2000 at 9:00am.