# Third District Court of Appeal

## State of Florida

Opinion filed January 17, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-1365, 3D21-1366, 3D21-1367, 3D21-1368, 3D21-1369
Lower Tribunal Nos. 18-16927, 19-2809, 19-6496, 19-8894, 19-9992

_____

**Parque Towers Developers, LLC,**
Appellant/Cross-Appellee,

vs.

**Pilac Management, Ltd., et al.,**
Appellees/Cross-Appellants.

Appeals from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Law Offices of Robert P. Frankel, P.A., and Robert P. Frankel (Plantation); Lauri Waldman Ross, P.A., and Lauri Waldman Ross, for appellant/cross-appellee.

Reiner & Reiner, P.A., and David P. Reiner, II, for appellees/cross-appellants.

Before HENDON, GORDO and BOKOR, JJ.

BOKOR, J.

These consolidated cross-appeals stem from a judgment entered after a bench trial finding Parque Towers Developers, LLC, a condominium developer and the appellant and cross-appellee, liable for breach of contract after allegedly failing to timely complete construction of five units as required by purchase agreements entered with the Purchasers, the appellees and cross-appellants. Parque Towers appeals, claiming that the trial court erred by interpreting the purchase agreements to require the units be completed by the date of December 31, 2017, or by rejecting its affirmative defense that a force majeure exception applied. The Purchasers cross-appeal, challenging the trial court's denial of their contemporaneous claims for fraud in the inducement under the Condominium Act due to allegedly deceptive representations about the square footage of the units. We find that the fraud claims were properly rejected, but that the trial court should also have denied relief under the breach of contract claims because the agreements did not create an affirmative obligation for the developer to complete the units by a date certain or otherwise make time of the essence.

**BACKGROUND**

All five Purchasers entered into functionally identical purchase agreements for pre-construction condominium units with Parque Towers, the owner/developer. The agreements contain no date certain for completion of

2

the units, but rather include a clause that "Seller estimates it will substantially complete construction of the Unit, in the manner specified in this Agreement, by December 31, 2017, subject to extensions resulting from 'Force Majeure' (the 'Outside Date')." Another provision states that "[w]henever this Agreement requires Seller to complete or substantially complete an item of construction, that item will be understood to be complete or substantially complete when so completed or substantially completed in Seller's opinion." Parque Towers repeated its estimation of a December 31, 2017, completion date in various updates and notices provided to the Purchasers throughout the construction process, though it never expressly represented that the units would be completed by any date certain.

The agreements also provide that "Purchaser understands that Seller has the right to schedule the date, time and place for closing, which in no event shall be scheduled later than one (1) year following the Outside Date" (referring to the estimated completion date, subject to any extensions) and which can only occur after the seller has received a certificate of occupancy for the units and provided the purchasers with 10 days' notice of the closing date.[1] Upon being furnished with these notices, the Purchasers become

---

[1] The agreement between Parque Towers and Josh and Michelle Kurzban included an addendum modifying the closing date to require closing be held

3

obligated to close on the units. If either party defaults under the agreement, the nonbreaching party must provide notice and a 20-day cure period. The agreement also includes a clause stating that time is of the essence as to the Purchasers' obligations only.

After several construction delays, allegedly due to hurricane and permitting issues, Parque Towers completed the units and noticed the purchasers of closing dates in early 2019. The Purchasers claimed default and subsequently brought the underlying suits for breach of contract, alleging that Parque Towers breached the purchase agreements by failing to deliver the completed units by December 31, 2017. Four of the five complaints also sought recission of the agreements due to fraudulent inducement under section 718.506(1), Florida Statutes, claiming that Parque Towers deceptively represented the units as being 2,500 square feet when the actual units delivered were under 2,000 square feet.[2] The cases were consolidated, and after a nonjury trial, the trial court denied the statutory claims due to the non-reliance provisions in the agreements, but found that Parque Towers had been obligated to deliver the completed units by

---

no more than 60 days after the developer's receipt of a certificate of occupancy.

[2] Parque Towers also brought its own counterclaims for breach of contract, which are not at issue on this appeal.

4

December 31, 2017, and failed to prove that a force majeure exception applied, and thus entered final judgment awarding the Purchasers the value of their purchase deposits, plus attorneys' fees and costs. These appeals followed.

**ANALYSIS**

We review a judgment entered after a nonjury trial to ensure the trial court's factual findings are supported by competent, substantial evidence. See, e.g., Sg 2901, LLC v. Complimenti, Inc., 323 So. 3d 804, 806 (Fla. 3d DCA 2021). The trial court's interpretation of a contract is a matter of law reviewed de novo. See, e.g., Charbonier Food Servs., LLC v. 121 Alhambra Tower, LLC, 206 So. 3d 755, 758 (Fla. 3d DCA 2016). Where a contract is clear and unambiguous, the plain language of the contract controls as the best expression of the parties' intent. Id.

Here, the agreements did not require Parque Towers to complete the units by December 31, 2017, or otherwise make time of the essence *as to the seller's obligations*. The only completion date referenced in the agreements is specifically described as an "estimate" for when the units will be "substantially complete" according to Parque Towers' own opinion, and Parque Towers ultimately did finish the units and schedule the closings within the time required by the agreements and upon proper notice. Aside

5

from the square footage, the Purchasers do not otherwise allege that the units themselves do not comport with the purchase agreements. Moreover, while the Purchasers all eventually notified Parque Towers that they considered its failure to deliver the units by December 31, 2017, to be a default under the agreement, none of them claimed default or sought to enforce the agreements until April 2018 at the earliest, long after the original estimated date and after they had been informed that the estimated completion date had been changed. Thus, irrespective of the evidence supporting Parque Towers' claims of delays due to force majeure, the trial court could not find Parque Towers in breach of a completion date that was purely estimated. See Am. Somax Ventures, Inc. v. Touma, 547 So. 2d 1266, 1268 (Fla. 4th DCA 1989) (finding that condominium purchase agreement providing for "estimated" completion date and allowing developer to extend closing date up to 2 years from estimate did not require completion of units by estimated date where purchasers did not make time of the essence by demanding closing after unit was not completed by estimated date); Dorchester Dev., Inc. v. Burk, 439 So. 2d 1032, 1033–34 (Fla. 3d DCA 1983) (noting that provision of construction agreement providing for "estimated" completion date and allowing buyer option to rescind purchase and refund deposit if not completed by estimated date was not equivalent to

6

contract obligating seller to complete building within a certain time); <u>Caronte Enters., Inc. v. Berlin</u>, 668 So. 2d 233, 234 (Fla. 3d DCA 1996) (reversing finding of seller's breach of contract to repair and sell property where contract included no specific closing date and did not make time of the essence as to closing, and buyers never formally demanded completion of repairs by a date certain); <u>see</u> <u>also</u> <u>Henry v. Ecker</u>, 415 So. 2d 137, 140 (Fla. 5th DCA 1982) ("Time is not of the essence in contracts for the sale and purchase of real estate unless the contract so provides.  When a contract for the sale and purchase of land does not make time of the essence as it relates to closing, a party can breach that contract only by refusing to perform after demand that a closing take place at a reasonable time and place." (citations omitted)).[3]

---

[3] Variations in dates and specific language aside, four of the five Purchasers provided Parque Towers with notices of default, explaining that they held Parque Towers in default for failing to close by the contractual estimated deadline, and seeking closing within 20 days or recission of the contract and return of the deposit.  None of the letters referenced bad faith or attributed any motive for Parque Towers failure to close by the estimated date, instead simply demanding closing or recission.  In each instance, Parque Towers responded by setting closing dates, most outside of the 20-day deadline demanded in the notices.  We take no issue with the Purchasers at some point walking away from the deal.  But absent some other factual or legal basis, not present here, the Purchasers have no right to insist on a closing by a date certain when the closing date was an estimate, not a date certain, and time wasn't of the essence.  While we hold that no per se breach occurred by failing to meet the estimated closing date, and therefore the failure to close within 20 days of the breach letters triggered no legal

7

However, the trial court properly rejected the Purchasers' statutory claims under section 718.506(1), Florida Statutes. That statute provides:

> Any person who, in reasonable reliance upon any material statement or information that is false or misleading and published by or under authority from the developer in advertising and promotional materials, including, but not limited to, a prospectus, the items required as exhibits to a prospectus, brochures, and newspaper advertising, pays anything of value toward the purchase of a condominium parcel located in this state shall have a cause of action to rescind the contract or collect damages from the developer for his or her loss prior to the closing of the transaction.

Id. The Purchasers allege that they entered into the purchase agreements in reliance on advertising and promotional materials estimating the completed units to be approximately 2,500 square feet. However, the agreements contain numerous provisions vesting Parque Towers with broad discretion to modify the construction plans and determine the final

<hr/>

consequence, we take no position on any other remedy the Purchasers may have exercised had they desired to exit the contract prior to the notice of closing. See, e.g., Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999) ("[W]here the terms of a contract afford a party substantial discretion promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party."). The trial court erred, however, in finding that that the Purchasers properly asserted a claim for breach based on the fact that the units weren't ready by the estimated date, regardless of the fact that the date was an estimate, any potentially good faith reason for the delays in construction and completion, or even though none of the Purchasers sought to close until April 2018, at the earliest.

specifications for the units, as well as expressly disclaiming the Purchasers'

reliance on any representations as to the specific square footage of the units:

> <u>Construction Specifications</u>.  The Unit and the Condominium will be constructed in substantial accordance (in Seller's opinion) with the plans and specifications kept in Seller's construction office, as such plans and specifications are amended from time to time (the "Plans and Specifications"). . . .  Without limiting Seller's general right to make changes, Purchaser specifically agrees that the changes described above and changes in the dimensions of rooms, patios and balconies . . . and in the general layout of the Unit and Condominium, may be made by Seller, in its sole discretion, and that such changes shall not be deemed material or adverse to Purchaser. . . .  As a result of the foregoing, **Purchaser and Seller both acknowledge and agree that the Unit and the Condominium may not be constructed in accordance with the plans and specifications on file with appropriate governmental authorities.**  Seller disclaims and Purchaser waives any and all express or implied warranties that construction will be accomplished in compliance with such Plans and Specifications.  Seller has not given and Purchaser has not relied on or bargained for any such warranties.

> . . . .

> Purchaser understands and agrees that there are various methods for calculating the square footage of a Unit, and that depending upon the method of calculation, the quoted square footage of the Unit may vary.  Additionally, as a result of the field construction and other permitted changes to the Unit, as more fully described in this Section, actual square footage of the Unit may also be affected.  Accordingly, during the pre-closing inspection, Purchaser should, among other things, review the size and dimensions of the Unit, and thereafter Purchaser shall be deemed to have conclusively agreed to accept the size and dimensions of the Unit, regardless of any variances in the square footage from that which may have been disclosed to Purchaser at any time prior to closing, whether included as part of Seller's promotional material or otherwise.  Without limiting the generality

of any other provision in this Agreement, **Seller does not make any representation or warranty as to the actual size, dimensions or square footage of the Unit, and Purchaser hereby waives and expressly releases any such warranty and claim for loss or damages resulting from any variances between any represented or otherwise disclosed square footage and the actual square footage.**

. . . .

Representations and Confirmations. Purchaser acknowledges, warrants, represents and agrees that this Agreement is being entered into by Purchaser without reliance upon any representations concerning any potential for future profit, any rental income potential, tax advantages, depreciation or investment potential and without reliance upon any other monetary or financial advice. Purchaser acknowledges and agrees that no such representations, including representations as to the ability or willingness of Seller or its affiliates to assist Purchaser in renting or selling the Unit, have been made by Seller, or any of its agents, employees or representatives. **This Agreement contains the entire understanding between Purchaser and Seller, and Purchaser hereby acknowledges that the displays, architectural models, artist renderings and other promotional materials contained in the sales office and model suite are for promotional purposes only and may not be relied upon. Purchaser warrants that Purchaser has not relied upon any verbal representations, advertising, portrayals or promises other than as expressly contained herein and in the Condominium Documents**, including, specifically but without limitation, any representations as to: (a) potential appreciation in, or resale value of, the Unit; (b) the existence of any "view" from the Unit or that any existing "view" will not be obstructed in the future; (c) traffic conditions in, near or around the Condominium; (d) disturbance from nearby properties; (e) disturbance from air or vehicular traffic; and/or (f) any future use of adjacent properties.

. . . .

> Entire Agreement. This Agreement is the entire contract for the sale and purchase of this Unit and once it is signed, it can only be amended by a written instrument signed by the party against whom enforcement is sought which specifically states that it is amending this Agreement. **Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement or the Condominium Documents, are void and have no effect. Purchaser has not relied on them.**

(Emphasis added).

"A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." Mac-Gray Servs., Inc. v. DeGeorge, 913 So. 2d 630, 634 (Fla. 4th DCA 2005); see also Billington v. Ginn-La Pine Island, Ltd., 192 So. 3d 77, 83 (Fla. 5th DCA 2016) ("A 'non-reliance' clause . . . negates a claim for fraud because it constitutes a contractual agreement on one element of a fraud claim—reliance."); Oceanic Villas, Inc. v. Godson, 4 So. 2d 689, 691 (Fla. 1941) ("The clause of the contract here relied on does not stipulate that the lease may not be rescinded for fraud, but it does stipulate 'and that no verbal agreements, stipulations, representations, exceptions or conditions whatsoever have been made or entered into in regard to the above described property which will in any way vary, contradict or impair the validity of this lease, or of any of the terms and conditions herein contained.' This provision in the contract does not make the contract incontestable because of fraud,

11

but evidences an agreement between the parties that no fraud had been committed.").

Here, Parque Towers retained discretion to modify the floor plans of the units at will during construction, and the Purchasers expressly disclaimed their reliance on any representations as to square footage and waived their ability to claim damages due to variances between estimated and final square footage.[4]  Thus, the trial court properly denied relief as to the fraud claims.

Affirmed in part, reversed in part.

---

[4] We recognize that Oceanic Villas distinguished between contracts merely disclaiming reliance on representations made prior to execution of the contract and those expressly precluding a party's ability to bring a fraud claim, finding that only the latter completely forecloses a claim of fraud in the inducement.  4 So. 2d at 691; see also NM Residential, LLC v. Prospect Park Dev., LLC, 336 So. 3d 807, 809 (Fla. 2d DCA 2022); Levitan v. Dancaescu, 347 So. 3d 485, 491 (Fla. 1st DCA 2022); McIntosh Fish Camp, LLC v. Colwell, 315 So. 3d 784, 787 (Fla. 5th DCA 2021) ("[T]he existence of a merger clause does not necessarily bar a fraudulent inducement claim."). However, because the agreement here "waives and expressly releases any such warranty and claim for loss or damages resulting from any variances between any represented or otherwise disclosed square footage and the actual square footage," we find this language sufficient to both disclaim reliance and affirmatively waive the Purchasers' ability to claim fraud in the inducement due to variances in the square footage of the units.