## FIREMEN'S INSURANCE CO. *vs.* McMILLAN.

[DEBT ON PENAL BOND—PLEA, NON EST FACTUM.]

1. *Presumption as to delivery of bond.*—When a deed or bond is found in the possession of the grantee or obligee, the presumption is that it was delivered to him.

2. *Delivery as an escrow.*—A deed or bond may be delivered as an escrow to any other person than the grantee or obligee, but it cannot be so delivered to him; but a special plea of *non est factum*, averring that the instrument was delivered as an escrow, is fatally defective, if it does not allege to whom the delivery was made.

3. *Error without injury.*—An error in overruling a demurrer to a defective plea is cured by a subsequent charge to the jury, given at the request of the plaintiff, that the evidence is not sufficient in law to sustain the plea.

4. *When errors will be revised at instance of plaintiff.*—Although the appellate court will not reverse, at the instance of plaintiff, when the record affirmatively shows that he never can recover, and the matter which renders a recovery impracticable is obvious and undisputed; yet, where the bill of exceptions puts the court clearly in error, and sets out evidence which, however weak, tends to show that he was entitled to recover at least a nominal sum, the indefiniteness and insufficiency of the evidence does not deprive him of the right to revise the rulings of the court.

5. *Surety's liability on penal bond not affected by judgment in assumpsit against principal.*—In debt on penal bond, conditioned for the principal obligor's faithful performance of his duties as secretary of an incorporated company, a plea by the surety, averring that the company had sued the principal in assumpsit, and had recovered judgment against him for the amount of his defalcation, is substantially defective on demurrer.

6. *How bailee may sue for embezzlement of money deposited with him.*—A bailee, being responsible for money rightfully deposited with him, may charge an embezzlement of it as of his own money, or may prove an embezzlement of it under an averment of the embezzlement of his own money.

7. *Surety's liability for principal's defaults.*—If money is received on deposit by an incorporated company, without authority under its charter, and is fraudulently embezzled by its secretary, the surety on his official bond is not liable for it.

8. *Record of indictment admissible to identify subject-matter of admissions.*—In debt on penal bond against the surety of the secretary of an incorporated company, to recover the amount of his principal's defalcation and embezzlement, an indictment against the principal for the embezzlement, drawn up by the attorney of the company and at its instance, is admissible evidence for the defendant, in connection with proof that the company had employed counsel to prosecute the principal under it, to identify the bills and notes therein described as the subject-matter to which the implied admission of the company related; and an indictment for the forgery of another surety's name to the bond, prepared in like manner, is admissible for a similar purpose.

9. *Admissibility and effect of judgment against principal as evidence against surety.*—A recovery against the principal, for his defalcations as secretary of an incorporated company, is not evidence against the surety on his official bond. either of the fact of embezzlement, or of the amount embezzled; but it would be admissible, it seems, in connection with proof that it was for the same defaults for which the surety was sued, and that it had been partly paid or discharged.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

DEBT by the Firemen's Insurance Company of Mobile against Thomas McMillan, on a penal bond which was dated July 10, 1850, purported to be signed by Rufus Greene, said McMillan and one Daniel Robertson, and which was conditioned as follows: "The conditions of the above obligation are such that, whereas the above bounden Rufus Greene has been elected secretary of the Firemen's Insurance Company of Mobile, now, therefore, if the said Rufus Greene shall well and truly perform all and singular the duties required of him according to the charter, by-laws and resolutions of said insurance company, now in force, as well as such other duties as from time to time may be required of him as secretary of said company, to the best of his judgment and ability, and according to law, then this obligation to be void; otherwise, to remain in full force and effect," &c.

The suit was commenced in January, 1851, and the declaration contained two counts; the first for the penalty, without noticing the condition; and the second setting out the bond and condition, and assigning breaches. The defendant filed seven pleas to the first count, which were, substantially, as follows: 1. " That at the time he signed said supposed writing obligatory, the same was filled with the names of Rufus Greene, this defendant and Daniel Robertson, but that the said supposed writing obligatory was not signed with the name of said Robertson; that defendant signed the same, and delivered it to Rufus Greene as an escrow, to be by him held until signed by Daniel Robertson, and then (and not until then) to be delivered to the plaintiff. And defendant avers, that said Robertson never did sign the same; and so he says, said supposed writing obligatory is not his act and deed," &c. 2. "Defendant says, he signed said supposed writing obligatory, and delivered the same, as an escrow only, to be delivered and binding on him in the event that one Daniel Robertson should execute the same, and that said Robertson never did execute the same; and so he says, that the same is not his act and deed," &c. 3. That he signed said supposed writing obligatory, and delivered the same to Greene, as an escrow only, "to become binding on him only in the event the same should be signed by some good and sufficient third person as co-surety"; that this was not done, and so it is not his act and deed, &c. 4. Substantially the same as the third, with the additional averment, "that the name of Daniel Robertson was forged to the same by said Greene"; and so it is not his deed, &c. 5. (After craving oyer of the bond and condition, and setting them out,) " That when said bond was presented to him for signature, it had in the body of the same the names of Rufus Greene, this defendant and Daniel Robertson, as the intended obligors; that defendant signed the same, and delivered it, as an escrow, to become his act and deed only when the same should be executed by said Robertson"; that it was not executed by said Robertson; and so it is not his act and deed, &c. 6. That plaintiff required of said Greene a bond, in the penalty and with the conditions of said supposed bond, and with two sureties; that Greene, in order to comply with such requisition, procured defendant to sign the same as one of his

sureties; that defendant did sign it, and delivered it to said Greene, only as escrow, and to become obligatory on him only when further signed by Daniel Robertson, or by some other third person, as co-surety; that no third person did execute the same, but that said Greene or some one else, without defendant's knowledge or consent, forged the name of said Robertson thereto; and so it is not his deed. 7. Performance generally.

The defendant demurred to the second count, but the court overruled his demurrer; and the plaintiff's demurrers to the several pleas above set out were also overruled. Thereupon the plaintiff joined issue on the first six pleas, and replied to the seventh assigning breaches. To this replication the defendant demurred, and his demurrer was overruled. It was then agreed that the same pleas should be considered as filed to the second count, and five additional pleas were filed, which were, 1st, *non est factum*; 2d, performance; 3d, "And for further answer to so much of said breaches as relates to bills and notes, defendant says that plaintiffs have elected to treat said Greene as their debtor for the amount of the same, and have ratified the acts of the said Greene in reference thereto, by having waived the tort and held Greene to answer for the value of the same in money"; 4th, that Greene has accounted with and paid plaintiff for the defaults complained of ; and, 5th, that plaintiff has released Greene. The plaintiff joined issue on all these pleas except the third; and the demurrer to the third having been overruled, issue was also joined on it.

On the trial, the plaintiff offered in evidence the bond declared on, with the deposition of Joseph Caywood, one of the subscribing witnesses, who testified, that he saw McMillan sign the bond, heard Greene at the same time acknowledge his signature, and did not recollect that anything else was said by the parties at the time; also, that the name of Daniel Robertson was not then signed to the bond. Plaintiff then offered evidence, conducing to show that said Rufus Greene, for several years prior to the date of said bond, had been secretary of said insurance company, the term of office being one year; that he was re-elected secretary on the 13th June, 1850, for the year commencing on the 15th July then next following; that he acted as secretary until the 24th December,

1850, and then resigned; that the board of directors of said company passed a resolution, previous to the last election of said Greene, requiring their secretary to give bond, with two sureties, in the sum of $25,000, for the faithful discharge of his duties; that it was the duty of said Greene, as secretary, to receive and safely keep, or properly pay out and disburse, the moneys, promissory notes, bills of exchange, and other effects of the company; that after the 15th July, 1850, and whilst said Greene was secretary of said company, moneys, promissory notes, and bills of exchange to a large amount, belonging to said company, were in Greene's hands as secretary, and were by him fraudulently embezzled and converted to his own use; and that he failed, on demand made by the president and directors of said company, to deliver the same to the persons authorized to receive them. "The evidence tending to prove these facts, was, that Greene, on the 2d July, 1850, produced to the directors a bundle of papers, purporting to be the bills and notes belonging to the company, (but none of which proved to be genuine, otherwise than by such admissions of Greene,) amounting to $123,000; which evidence was admitted against the objection and exception of defendant. Also, proof that, about the 15th December, 1850, after some suspicion that all was not right, and in response to a call from the directors for an account, Greene exhibited a bundle of papers, purporting to be bills and notes belonging to the company, to the amount of about $40,000, and entries in the company's bank-book showing about $60,000 more of bills, notes, and cash in bank; but the genuineness of none of them was proved—on the contrary, some of the pretended notes and bills were afterwards ascertained to be forged copies of genuine notes, which the company had taken; and the entries in the bank-book were proved to be forgeries. This proof in no wise identified any bill or note, by parties, date, amount, or in any other manner; and the proof made by defendant tended to show that, when Greene made said exhibition in July, he was largely a defaulter; that when he made the exhibit in December, he was not only suspected, but knew that he was suspected; and that on the 25th December he admitted his default, saying that it was useless longer to attempt to conceal the matter."

The plaintiff then offered evidence tending to show that, by an agreement between said company and the corporate authorities of Mobile, the city taxes were deposited with the company, and that Greene, as secretary, was authorized and required by the president and directors to receive and keep these funds until they should be properly called for or paid out; and offered to prove by the tax-collector that, after the 15th July, 1850, and before the resignation of Greene as secretary, city taxes to a large amount were deposited with said company, and were received by Greene as secretary. The defendant objected to this evidence, on the ground that the company was not authorized by its charter to receive money on deposit; the court sustained the objection, and the plaintiff excepted.

The plaintiff offered in evidence, also, the record of a judgment recovered against said Greene, in the city court of Mobile, at its July term, 1851, for $95,000, the amount of his alleged defalcation as secretary of said company. This judgment was rendered by *nil dicit*, and the action was *assumpsit*. The defendant's counsel agreed that the record might be read in evidence, subject to the opinion and charge of the court as to its effect.

"The plaintiff gave evidence, also, conducing to show that said bond was actually delivered by said Greene to the president of said company, about the latter part of July, 1850. The evidence (and the only evidence) on the question of delivery, was that of Caywood, above set out; the resolution of the company requiring bond and two sureties; and the face of the bond, from which it appeared (and which was admitted by plaintiff to be the fact) that, when McMillan signed the bond, the names of Greene, McMillan and Robertson were in the face of the bond as obligors, and a seal remaining at the bottom, after Greene and McMillan had signed, to which there was no signature or attestation; and the proof that the president of the company wished to leave home for the summer about the last of July, and called on said Greene for his offical bond, and *was* (?) told he must furnish it—that the president would not leave until he did, and that if he did not do so speedily, the president would call the directors together; when Greene replied, that it was incomplete, but he would

get it completed and hand it in. The president left home in a few days, and nothing more was proved to have been seen or heard of the bond, until after Greene's resignation on the 24th December, 1850, when the witness saw the bond in the president's possession. The plaintiff offered in evidence, also, entries on the books of the company, made by said Greene while secretary, and after the 15th July, 1850; and admissions of said Greene during that time, tending to show that he was a defaulter to the amount of the judgment recovered against him as aforesaid."

The bill of exceptions sets out some other evidence which was adduced by the plaintiff, but which is not deemed material.

"The defendant offered in evidence to the jury the original indictment found against said Greene at the February term, 1851, of the city court of Mobile, for the alleged larceny and embezzlement of notes and bills of the plaintiff; upon which indictment, it was admitted, a *nolle prosequi* had been subsequently entered. It was proved that said indictment was in the handwriting of, and had been drawn up by, counsel employed by the plaintiff to prepare said indictment; and it was then offered by defendant, as evidence of an admission on the part of plaintiff that said notes and bills had been embezzled or stolen by said Greene before the 15th July, 1850. Thereupon, plaintiff objected to the admission of said indictment in evidence, and moved the court to exclude the same from the jury; but the court overruled said objection, and permitted said evidence to go to the jury; to which the plaintiff excepted. The defendant stated, in offering the indictments (both that here mentioned, and the one hereafter mentioned), that it was offered, not as evidence of the fact of embezzlement or forgery, but to show to what the admission of plaintiff, afterwards to be proved, related; stating that he would prove, and then immediately proceeding to prove, that plaintiff had employed counsel to prosecute Greene on these indictments, and thereby admitting that the offenses charged had been committed. The object was to prove nothing by the record, except by its application to the admissions of plaintiff, and to show to what bills and notes the admissions related. Defendant also offered in evidence, for the purpose before shown, an

11

indictment against said Greene, found in the city court of Mobile at its February term, 1851, for the alleged forgery of the name of said Robertson to said bond, and the judgment of conviction thereon"; "and proved, also, that this indictment had been drawn up by counsel employed by plaintiff to prosecute Greene for said alleged forgery. To the admission of this indictment plaintiff also objected, and moved the court to exclude the same from the jury; but the court overruled the objection, and the plaintiff excepted."

The forgery of Robertson's name to the bond was admitted by the plaintiff; "and the defendant having offered evidence tending to show large defaults by Greene before the 10th July, 1850, the plaintiff offered no rebutting proof, and gave no evidence to distinguish the amount of defaults (if any) done before and after the 10th July, 1850." The defendant also offered evidence tending to show that the plaintiff, after Greene's defalcation became known, realized a large sum from his assets, and credited said judgment against him with a portion of the amount.

The court gave numerous charges to the jury, which it is not necessary to set out. The 12th and 14th charges were as follows:

"12. The judgment in favor of the company, against Greene, obtained in the city court, is not, of itself, evidence in the case at bar, to show the extent of the surety's liability. It has been admitted, however, without objection on the part of the defendant, to be evidence so far as it may be shown by extraneous evidence to have been based upon defaults occurring after the delivery of the bond. The judgment, then, is in evidence, subject to such restriction, to be considered by you, in connection with the evidence introduced to explain and limit it, in ascertaining the amount of the surety's liability."

"14. If there were defalcations for which the defendant was liable, but the plaintiff has obtained satisfaction or payment for such defalcations from the principal obligor, that would discharge the liability of the defendant. If the payments, or money, or property, which the company may have obtained from the principal obligor towards satisfaction for such defalcations, were less than the amount of such defalca-

tions, then the surety would be liable for the residue, to the extent of his bond, unless there was proof that the company had elected to discharge the liability of the surety, to the extent of the money or property so obtained."

The plaintiff excepted to both of these charges, and then asked the following : " That if the jury believe from the evidence that the bond was signed and sealed by the defendant, and acknowledged by him in the presence of an attesting witness, and was then delivered by him to Rufus Greene, for the purpose, and with the expectation, of its being by him delivered to the plaintiff; and that there was, at the time it was so delivered by the defendant, an express condition declared by the defendant to Greene, that it should not be binding on the defendant, unless the bond was also signed by Daniel Robertson or some other person as co-surety; and that that condition was not communicated or made known to the plaintiff before the delivery of the bond by Greene to the plaintiff; and that Greene afterwards signed the name of Robertson to the bond, without authority from said Robertson; and that it was not known to plaintiff, at that time, that the name of said Robertson was forged, or signed by a person not authorized to sign it,—this would not make it an escrow, but it was valid as a bond against the defendant. This charge the court refused, and the *defendant* (?) excepted."

The court further charged the jury, at the plaintiff's request, as follows : "That if the jury believe from the evidence that the bond sued on was signed and sealed, or acknowledged, by the defendant in the presence of the subscribing witness, and it was afterwards in the possession of the plaintiff, and produced by the plaintiff on the trial—this is sufficient *prima facie* evidence that it was signed, sealed, and delivered by the defendant to the plaintiff, and throws on the defendant the burden of proving that it was only delivered by him as an escrow; and that the evidence offered by the defendant on this point being all in writing, and no conflict of evidence respecting it, the evidence is not sufficient in law to prove that it was only delivered as an escrow."

The rulings of the court on the pleadings and evidence, and the charges to which exceptions were reserved, are now assigned as error.

Wm. G. Jones, for the appellant.—1. The correctness of the ruling of the court on the demurrer to the first six pleas, and of the charge asked and refused, depends upon what is necessary to constitute an escrow. On the part of the plaintiff, it is insisted that, to constitute an escrow, the delivery must be made to a stranger: it cannot be to the obligee or grantee, nor, as we insist, to a co-obligor. Such, undoubtedly, is the doctrine held in England from a very early period, and supported by the highest authority.—Sheppard's Touchstone, 58, 59; 2 Bla. Com. 307; 4 Kent's Com. 454. The same doctrine has been held by the supreme court of the United States, and by the highest courts of many of the States.—Moss v. Riddle, 5 Cranch, 351; Fairbanks v. Metcalf, 8 Mass. 238; Lawton v. Sager, 11 Barbour, 349; Warrall v. Mann, 1 Selden, 229–38; Graves v. Tucker, 10 Sm. & Mar. 9; Johnson v. Branch, 11 Humph. 521; Foley v. Cowgill, 5 Blackf. 18; 4 Pick. 520; 10 Wend. 313; 23 Wend. 45; 4 Watts, 180; 16 Vermont, 530. It is supposed that the decision in Bibb v. Reid, 3 Ala. 88, is contrary to this doctrine; but, admitting that it decides there may be a delivery as an escrow to a co-obligor, it does not decide that there may be such a delivery to the obligee; and therefore it does not support the fourth or fifth plea, each of which alleges a delivery generally, but does not state any particular person. The presumption is, that the delivery was to the plaintiff. No case can be found deciding that there can be a delivery as an escrow to the obligee. The defendant must show by his plea to whom the delivery was made.—3 Chitty's Pleadings, 962, note o; 5 Bac. Abr. 809. Upon principle and public policy, as well as upon authority, the doctrine should be fully maintained, that there cannot be a delivery as an escrow to any but a stranger.

2. It is further insisted, that the condition, if any, must be made known to the obligee. This is reasonable, as well as necessary to avoid opening the door to the grossest fraud. It is expressly so decided by this court, in Price v. Cloud, 6 Ala. 249–54; also, in McClure v. Colclough, 17 Ala. 89. None of the pleas state that the alleged condition was known to the plaintiff.

3. Greene, as shown by the pleas, was the defendant's agent as to the delivery of the bond to the plaintiff. If he

violated the trust reposed in him by the defendant, and forged Robertson's name to the bond, the defendant, having by his act enabled Greene to do this, ought to bear the loss.

4. The third additional plea is clearly bad, and the demurrer to it should have been sustained. The fact that the plaintiff held Greene responsible, could not discharge either him or the defendant.

5. The evidence as to the city taxes was erroneously excluded. The charter of the company, as amended, certainly does not prohibit it from receiving money on deposit. This may be done consistently with the charter, and, indeed, is authorized by the charter. But, even if this was not so, it is shown that Greene, as secretary, was duly required to receive this money; it is within the terms of his bond; and neither he, nor the defendant, can raise this objection.

6. The admission of the indictments as evidence was erroneous. They were necessarily instituted, prosecuted and conducted, in the name, and by the officers of the State. The plaintiff was no party to the record. It could not have been evidence for the company, and of course could not be used against the company: there must be mutuality.—1 Green. Ev. § 524.

7. The 12th charge of the court, in relation to the effect of the plaintiff's judgment against Greene, was erroneous. It was, at least, *prima-facie* evidence against the defendant, both of the fact of the embezzlement and the amount embezzled.—Drummond v. Prestman, 12 Wheaton, 515; Williamson v. Howell, 4 Ala. 693–5; McClure v. Colclough, 5 Ala. 65. The entries and admissions made by Greene were admissible in evidence against the defendant.—Pendleton v. Bank of Kentucky, 1 Monroe, 178–81; Middleton v. Melton, 10 Barn. & Cress. 318; Townsend v. Everett, 4 Ala. 607–12; 7 Ala. 835; 9 Ala. 484; 13 Ala. 321. The defendant was liable for moneys, or effects, received by Greene before the execution of the bond, but wasted afterwards.—4 Ala. 607; 7 Ala. 79–82. And where effects of the company are shown to have been in Greene's hands, the burden of showing that they were properly disposed of is thrown on the defendant.—The United States v. Boyd, 5 How. (U. S.) 29–50; Baldwin v. Gully, 11 Ala. 716.

8. The 14th charge was also erroneous. The judgment against Greene was for $95,000, and there was a considerable amount of interest on it. The whole amount realized by the plaintiff was not, at most, more than $61,000. There then remained due on the judgment largely over $31,000, which is much beyond the penalty of the bond sued on. The charge, then, was not warranted by the evidence; was erroneous, and calculated to mislead the jury. There was no ground for the application of the doctrine of the appropriation of payments. The record set out all the evidence in the case, and showed that the whole recovery was for defaults occurring after the last bond was given.

9. Injury will be presumed from error, and the judgment will be reversed, unless the record shows, affirmatively and clearly, that no injury was possible.—Kirksey v. Dubose, 19 Ala. 44; Spivey v. McGehee, 21 Ala. 423; Frierson v. Frierson, 21 Ala. 550; *Ex parte* Keenan, 21 Ala. 558; Gilmer v. Ware, 19 Ala. 258.

ROBERT H. SMITH, *contra.*—1. The record shows that, in no aspect of the case, was the plaintiff entitled to recover. The liability covered by the bond was only one term of office: it was either the term ending the 15th July, 1850, or the term then begun; and it only took effect from its delivery, which was in the latter part of July, 1850.—4 Kent's Com. 454; Burlestone on Bonds, 9. Conceding that it was the term then to begin, it covered defaults committed from and after the 15th July, and not from 2d July; and the burden of proving defaults after that day was on the plaintiff. The plaintiff gave (illegal) proof, faintly tending to show a default after the 2d July; and on its own showing, therefore, no recovery could be had.—Arlington v. Merrick, 2 Saunders, 414, note; 24 Ala. 450; 2 Maule & Sel. 363; 3 *ib.* 502. The defendant gave evidence, strongly showing large embezzlements by Greene before the 10th July, 1850; and against this evidence plaintiff "offered no rebutting proof, and gave no evidence to distinguish the amount of defaults (if any) done before and after the 10th July, 1850." This evidence consisted of strong facts, tending to prove a matter, without rebutting proof of any kind to disprove it. This is but

another phrase for *prima-facie* evidence, which, until rebutted, is conclusive. The fact that defaults were committed before the 10th July was proved, and no rebutting proof was offered; conceding that the plaintiff's proof tended to show defaults after that day, where was the proof to distinguish the amount of these subsequent defaults? where was the proof by which the jury were to ascertain the amount for which the defendant was liable? The law, in such case, says for nothing. 1 How. (U. S.) 104, 259; 8 Peters, 418; 1 McLean, 493; 9 Cranch, 212; 5 How. (U. S.) 29; 8 Peters, 399, 383.

2. The court charged the jury, at the appellant's request, that "the evidence was not sufficient, in law, to prove that the bond was delivered as an escrow." This charge threw the question of delivery out of the case, and rendered it impossible for the plaintiff to be harmed by any pleas touching that question. It is well settled, that error, without injury, will not reverse.—Stein v. Ashby, 24 Ala. 527.

3. The pleas demurred to are good. The declaration showed that a bond, with two sureties, was required; and the pleas aver that the instrument was given to Greene, to be held until the third name was added, and then to be delivered. A bond may be delivered as an escrow to a co-obligor, or to the obligee.—Bibb v. Reid, 3 Ala. 91, and cases cited; 4 Barn. & Adol. 440; 2 Barn. & Cress. 82; 7 Blackf. 355; 12 Leigh, 479; 4 Watts, 21; 3 Wendell, 380; 2 Leigh, 157; 2 Geo. 203; 30 Maine, 110; 11 Ala. 466.

4. The third additional plea, which was taken in short, alleges that the company held Greene as its debtor, (as distinguished from being liable for damages,) and ratified his act. It raises no objection to answering on account of the bills and notes, but says, in substance, that since the company has ratified the act, the defendant, though liable under the bond for so much *money* received and converted, is not liable for damages for the wrong. In other words, it says, "I will answer to this matter on your counts for money, but you are no longer in a condition to call it an embezzlement of bills and notes." That the plea is good, see Story on Agency, §§ 254, 259; 3 Dallas, 357; 3 Johns. Ch. 261; 1 Hill, 240; Addison on Contracts, 407; 24 Ala. 81; 23 Ala. 783; 22 Ala. 405; 20 Ala. 216; 15 Ala. 705; 5 S. & P. 340.

5. The indictments were only offered in evidence to identify the subject-matter of the plaintiff's admissions; a purpose for which they were legal and proper.

6. The evidence as to the city taxes received on deposit, was rightly excluded, not only for the reason that the charter of the company did not authorize it to receive money on deposit, but because no such matter was alleged in the declaration. The only allegation is, that Greene embezzled the money, notes and bills of the company; while the evidence was in reference to money paid in, "to be kept until called for or paid out."

7. The 12th charge of the court, as to the effect of the plaintiff's judgment against Greene, was more favorable to the plaintiff than the law would justify; and the 14th is liable to the same objection.

CHILTON, C. J.—An escrow is defined to be "a conditional delivery of a deed to a stranger, and not to the grantee himself, until certain conditions shall be performed, and then it is to be delivered to the grantee."—Bouv. Law Dic., 'Escrow'; Jacob's Law Dic., same title; 2 Rol. Abr. 25–6; Law Grammar, p. 537; Co. Lit. 31–36; 2 Bla. Com. 387; 1 Steph. Com. 459.

When a deed is found in possession of the grantee, the presumption is that it was duly delivered to him.—3 Maryland Rep. 67; 11 Geor. Rep. 636; 2 Mich. Rep. 390; 6 Missouri Rep. 326; 1 McLean's Rep. 321; 5 Shepley, 391; 7 Iredell, 384; Houston v. Staunton, 11 Ala. Rep. 412; McMorris v. Crawford, 15 *ib.* 271. This presumption may be rebutted, by showing that the grantee obtained it surreptitiously or illegally; the burden of showing this being upon the party assailing the deed.

2. Although the earlier cases are not altogether uniform, the elementary writers, and the modern adjudged cases, are generally agreed that a deed cannot be delivered as an escrow by the obligor or grantor to the obligee or grantee. Such seems to be the doctrine of the American courts.—See Fairbanks v. Metcalf, 8 Mass. Rep. 230; Ward v. Lewis, 4 Pick. Rep. 520; Simonton's Estate, 4 Watts, 180; Jackson v. Catlin, 2 Johns. Rep. 259; Warrell v. Mann, 1 Seld. R. 229; Lawton

v. Sager, 11 Barb. Sup. C. Rep. 349; Johnson v. Branch, 11 Humph. Rep. 521; Graves v. Tucker, 10 Sm. & Mar. Rep. 9; Jordan v. Pollock, 14 Geo. Rep. 145; Dawson v. Hall, 2 Mich. (Gibbs') 390; Fowley v. Cowgill, 5 Blackf. Ind. Rep. 18; Currie v. Donald, 2 Wash. Va. Rep. 58; 2 Lomax's Dig. 29; Moss v. Riddle, 5 Cranch, 351; Shep. Touch. 58–9; Bl. Com. vol. 2, 307.

But a deed may be delivered as an escrow, to any other person than the grantee or obligee. Thus, a bond for the performance of official duty, may be delivered as an escrow to a co-obligor; and a constable's bond may be delivered as an escrow to the clerk of the county court.—Robertson v. Coker, 11 Ala. R. 466; Bibb v. Reid, 3 Ala. Rep. 88; McClure v. Colclough, 5 Ala. R. 65; Lovett v. Adams, 3 Wend. R. 380; So. Life Ins. & Trust Co. v. Cole, 4 Florida Rep. 359.

We are unwilling to hold that a deed may be delivered to the grantee himself as an escrow, no qualification appearing upon the face of it limiting its effect. Such conditional delivery would lead to incalculable mischief. Where fraud is alleged in obtaining the deed, this, we grant, may be shown by parol; but such is not the case before us. Whether there is such an identity between a corporation and its officers, as will prevent a delivery to one of the latter from operating as an escrow, is a question well worthy of consideration; but, since it was not raised upon the trial, nor discussed by the counsel, we decline to consider it at this time. See, however, upon this point, Life Ins. & Tr. Co. v. Cole, 4 Florida Rep. 359.

Applying the principles of law above announced to the pleas in this case, it is clear that the second and fifth pleas, which fail to aver to whom the bond was delivered, are defective,—the presumption being that the same was delivered to the obligee.

3. But, although the court committed an error in overruling demurrers to these pleas; yet, we think, this error was rendered perfectly harmless, by the charge given, *at the instance of the appellant*, by the court to the jury, "that the evidence offered by the defendant on this point" (the delivery of the bond as an escrow) "being all in writing, and no conflict of evidence respecting it, *the evidence is not sufficient in*

*law to prove that it was delivered only as an escrow."* Without
intending to decide that it would be competent for the court,
after having committed an error in forcing the plaintiff to
take issue upon insufficient pleas, either *mero motu*, or upon
*request of the defendant*, to heal the error by charges to the
jury, we are of opinion, that when the plaintiff himself,
against whom the error has been committed, virtually with-
draws the issues raised by the objectionable pleadings from
the jury, (as upon a motion for instructions in the nature of a
demurrer to the evidence, as applicable to such issues,) and
the court, in compliance with his request, instructs the jury
that the evidence, in law, does not sustain the pleas, *he* cannot
be heard to complain that the court has held the pleas to be
good; for we must presume that the jury conformed to the
positive direction of the court, as to the legal insufficiency of
the proof, and in this aspect of the case, the record affirma-
tively shows that the appellant sustained no injury. It is too
well settled, by numerous decisions of this and other courts,
to require the citation of the cases, that an error, which the
record shows to have been harmless, furnishes no ground for
reversal. This view renders it unnecessary that we should
say more upon the subject of the conditional delivery of the
bond by McMillan.

4. It is further insisted by the counsel for the appellee,
that the other errors assigned upon the record are alike
harmless, for the reason, that the record fails make out a
*prima-facie* case against the defendant; affirmatively showing
that there was "no evidence distinguishing the amount of
defaults (if any) done before and after the 10th July, 1850,"
that being anterior to the delivery of the bond. There was
some evidence *tending* to show default by Greene within the
period covered by this bond. Whether it was sufficient to
authorize the jury to find for the plaintiff, is not a question
before us. If it *tended* to show defaults covered by the bond,
however weak it may have been, the plaintiff had the right
to have the jury pass upon it, and to make it the predicate
for charges. If it failed to fix the amount of Greene's defal-
cation, or to distinguish between defaults committed by him
before and after the bond was executed; still, if there were
defaults covered by the bond, we apprehend the plaintiff

would be entitled to recover a nominal sum at least; and in this view, he has such a standing in court as to claim a revision of its decisions adverse to him. If the entire record affirmatively shows that the plaintiff never can recover, and the matter which renders a recovery impracticable is obvious and undisputed, the court will not reverse, although the record may abound with errors, since it would do a useless thing. Brook v. Young, 4 Ala. Rep. 584; Marshall v. Betner, 17 *ib.* 836. The burden of proof is on the plaintiff; and the company must not only prove that Greene made default, in some matter falling within the legitimate scope of the condition of his bond, but that such default occurred during the period to which the bond applied. Nevertheless, this proof is for the jury; and correct practice does not require the plaintiff to set out the evidence in his bill of exceptions, in order to revise the decision of the primary court, except so far as is necessary to put the court in error.

5. Addressing ourselves to the consideration of the other questions raised upon the record, we come next to the third additional plea to the second breach assigned. The breach avers that, whilst the bond sued on was in full force, a large number of promissory notes and bills of exchange came to the possession of said Greene, as secretary of the company, the same being the property of said company, amounting to a large sum, viz., to the sum of one hundred thousand dollars; that it was said Greene's duty, as secretary of said company, to keep said notes and bills safely, to deliver the same over to the plaintiff, and to account for them upon demand, &c.; that Greene, not regarding his duty as secretary as aforesaid, did not safely keep and account for said notes and bills, though requested by the plaintiff so to do, but, on the contrary, while he was secretary, and while the said bond was in full force, fraudulently embezzled said notes and bills, and converted the same to his own use. In reply to this, the defendant, by his third plea, says, " that the plaintiffs have elected to treat said Greene as their debtor for the amount of the same," (the said notes and bills of exchange), " and have ratified the acts of the said Greene in reference thereto, by having waived the tort, and held Greene to answer for the

value of the same in money." This plea was received in short, by the consent of the plaintiff.

The demurrer concedes that the plaintiff elected to treat Greene as their debtor for the amount of the bills and notes, and has ratified his embezzlement and tortious conversion, by having waived the tort and held Greene to answer for the notes and bills in money. Had this action been against the persons who received from Greene the bills and notes, then it would have been competent for them to show, in bar of the suit, a ratification of Greene's unauthorized acts in disposing of the property of the company to them ; for this would relate back, and make the act lawful. In such case, the authorities cited by the counsel for the appellee, would be in point. But this is not the case before us. Here, the plaintiffs say to the sureties, " Greene has embezzled, and converted to his own use, notes and bills to the amount of $100,000 ; you have engaged, by your bond, to make good this loss to us." Is it any answer to this demand, for the surety to respond, " True, as you allege ; but in consequence thereof, you have held Greene to answer for $100,000 as your debtor, and, by doing so, you have waived his wrongful conversion, and ratified his acts with reference to the notes and bills ?" It will be observed, that the plea contains no averment that the surety has been placed in any worse condition by the act of the plaintiff. It sets forth no contract or agreement, between the plaintiffs and principal, by which the obligation of the surety is changed, or in anywise affected. It does not even aver (a matter which, perhaps, in a court of law would not be available) that, by the ratification of the wrongful acts of Greene, the title to the converted assets has been confirmed to Greene's transferrees, and that the assets are thus placed beyond the reach of the surety, who could otherwise have pursued them for his indemnity. The amount of the defense is, that the plaintiff, having a several remedy against Greene and his surety, has pursued one form of action (assumpsit) against Greene, and another against the surety. There being no change of the surety's liability, no release of the principal, nor satisfaction of the demand, averred, the plea is manifestly bad, and the demurrer to it should have been sustained.

6. The appellee engaged, by his bond, that Greene should

discharge all the duties required of him as secretary of the company, " according to the charter, by-laws and resolutions of said insurance company, now in force, as well as such other duties as from time to time may be required of him as secretary," &c. By an arrangement between the plaintiff and the corporate authorities of the city of Mobile, the city taxes were paid over to, and deposited with the plaintiff ; and said Greene was authorized, and required, by the president and directors of the company, to receive and keep the same, until they should be properly called for and paid out. This proof being made, the plaintiff offered to show that a large amount of money had been deposited with the company during the period covered by the defendant's bond ; but the circuit court held the evidence inadmissible, on the ground that the charter of the plaintiff did not authorize it to receive money on deposit. It is also here insisted, that the proof was properly rejected, upon the additional ground, that the declaration makes no charge of a default with respect to such fund. This last ground of rejection is untenable. If the company was the rightful bailee of the fund, it might well charge an embezzlement of it as of its own money, being responsible for its return.

7. As to the ground upon which the proof was rejected by the court, the charter is not before us, and we cannot therefore say whether or not the company could rightfully receive the money on deposit. If it did so without authority, it is very clear that the defendant would not be bound to make good Greene's default respecting it. The surety has the right to stand upon the terms of his contract. He is not liable for any default of his principal, in respect of matters without the scope of his principal's legitimate duties, as presented by the charter, and the by-laws and regulations of the company made in conformity therewith ; and if the company engaged in business without the scope and purview of its charter, or which is expressly forbidden by the law of its organization, the surety cannot be considered as having entered into any engagement with reference to such business. It follows from what we have said, that if the circuit court was right in deciding that the charter of the plaintiff did not warrant it in receiving money upon deposit, the proof was properly

excluded.—McKay & McDonald v. Dodge and McKay, 5 Ala. Rep. 388.

8. The indictments against Greene were properly admitted, under · the limitation prescribing their effect as evidence. They were not, of themselves, testimony ; but the plaintiff had prosecuted Greene for embezzlement and for forgery,— for embezzling what ?   The indictment, prepared at the plaintiff's instance by its attorney, answered, the notes and bills therein specified ; and so of the bond, with the forgery of which he was charged and convicted. , The indictment identified the subject-matter to which the admission, to be implied from the prosecution, had reference.   We cannot readily perceive the bearing of such proof upon the issues ; but we cannot say from the record that it was wholly irrelevant.

9. We deem it unnecessary to notice the charges particularly, as some of them are involved, and we are not at all sure that we should arrive at the true meaning of the court in regard to them.   As to the effect of the judgment against Greene in the city court, his surety, McMillan, was no party to that suit, and is not in any way concluded by it.   Indeed, if we understand the effect of the 12th charge, it makes its force as evidence depend entirely upon the proof *de hors* the record, showing that such judgment was predicated, in whole or in part, upon defaults of Greene covered by the bond; and this virtually, in one aspect, destroyed its force altogether.

But it is insisted by appellant, that the judgment against Greene is *prima-facie* evidence against McMillan, his surety, of the fact of embezzlement, and the amount by him embezzled. To this point, the learned counsel cites two cases from our own reports—Williamson v. Howell, 4 Ala. Rep. 693; and McClure v. Colclough, 5 *ib*. 65.   The decision of these cases was rested upon our statutes applicable to them, and cannot therefore be regarded as authority indicating the common-law rule applicable to the case before us.   He also refers us to the case of Drummond v. Prestman, 12 Wheat. Rep. 512, in which a judgment against the principal was received in evidence to charge the guarantor.   It will be observed, that the judgment in that case was by confession of the principal. It was a voluntary undertaking on his part, of record, to pay the sum confessed to the creditor; and the guarantor, by his

letter of guaranty, stipulated to guaranty the conduct of his son, the principal, and to hold himself liable "for the faithful discharge of all his engagements" to the plaintiff, "both now and in the future." The payment of this judgment, which the son had confessed, might, perhaps, have properly been regarded as one of "the engagements" the son had entered into, within the scope, and covered by the undertaking of the guarantor, as contained in the letter of guaranty. If such be the extent of the guarantor's undertaking, it is very clear, the judgment confessed by the son was not only *prima-facie* evidence, but, in the absence of fraud or collusion between him and the creditor, was conclusive against the father. It was upon this principle the cases in 4th and 5th Ala. Reports, cited *supra*, were made to turn. The statutes, upon a proper construction of them, made the sureties liable for the judgments rendered in those cases against the principals. So, also, in suits against bail, judgments rendered against the parties for whose appearance they made themselves answerable, are conclusive as to the amount of their liability.—Patton v. Caldwell, 1 Dall. Rep. 419. Unless, however, the decision of Drummond v. Prestman can be rested on the construction of the guaranty, as an undertaking to pay the judgment, and consequently an agreement to be bound by it, we venture to say, yet with the highest regard for the learning of the judges who delivered it, the decision cannot be supported as a correct exposition of the law. The case of the City of Lowell v. Parker, 10 Metc. Rep. 314, sustains the view taken by the supreme court of the United States in Drummond v. Prestman; but that case is based upon a misconception, in part at least, of the authorities relied upon, and is opposed to the current of authorities applicable to this point.—See them collated in Phil. Ev., C. & H. Notes, pp. 669, 816, 984; and 2 Amer. Leading Cases, by Messrs. Hare & Wallace, 184–188. The true rule is, that a recovery against the principal cannot be used as evidence to charge the surety, except in cases where the contract of the surety can be construed into an undertaking to be bound by the result of legal proceedings against the principal; and we apprehend, when the judgment is binding on the surety at all, it is conclusive, and not merely *prima-facie* evidence. There is, in our opinion, no middle

ground.—4 Ala: Rep. 69, *per* Goldthwaite, J. The surety is either a party, or privy, and bound by the judgment; or a stranger, and not bound. In the case before us, he falls within the second category, and the judgment is no evidence to charge him.

In another aspect, however, the judgment may properly be received in evidence. It may be received in connection with proof that it was rendered for the same defaults of Greene now complained of in this suit, and that it has been paid or discharged, in whole or in part.

We deem it unnecessary to discuss the other points raised in argument, as they may not arise upon another trial.

For the errors we have mentioned, the judgment must be reversed, and the cause remanded.

RICE, C. J.—The foregoing opinion, except the 4th paragraph, was prepared by Chief-Justice Chilton before he left the bench. The only material change we have made in the opinion as prepared by him, is the insertion of the 4th paragraph as it appears above, in lieu of the 4th paragraph as prepared by him. This change having been made, we adopt the foregoing as the opinion of this court.