[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 7 2000
THOMAS K. KAHN
CLERK

_____

No. 99-6100

_____

D. C. Docket No. 96-CV-2682

DRILL SOUTH, INC.,

Plaintiff-Appellee-Cross-Appellant,

versus

INTERNATIONAL FIDELITY INS. CO.,

Defendant-Appellant-Cross-Appellee.

_____

No. 99-13590

_____

D.C. Docket No. 96-02682-CV-N-S

DRILL SOUTH, INC.,

Plaintiff-Counter Defendant-Appellee,

versus

INTERNATIONAL FIDELITY INS. CO.,

Defendant-Counter Claimant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(December 7, 2000)**

Before COX, BLACK and FAY, Circuit Judges.

PER CURIAM:

This is a Miller Act payment bond action arising from a federal construction project ("the Project") at the Redstone Arsenal in Huntsville, Alabama. International Fidelity Insurance Co. ("International Fidelity"), a Miller Act surety, argues on appeal that the district court erred by granting judgment against it solely on the basis of a default judgment entered against its principal, that the district court lacked personal jurisdiction over its principal, and that the district court erred by granting an award of attorneys' fees. After considering the parties' arguments and the record in this matter, we affirm the rulings of the district court.

In 1995, Enviro-Group, Inc. ("Enviro-Group"), an Indiana-based company, contracted with the United States to perform construction work on the Project. International Fidelity issued payment and performance bonds on behalf of Enviro-Group, as required by the Miller Act. Drill South, Inc. ("Drill South") entered into a subcontract with Enviro-Group to perform certain drilling work, and, in turn, contracted with Miller Drilling Co., Inc. ("Miller Drilling") to perform work on the project.

Enviro-Group defaulted on the contract, and Miller Drilling brought suit for unpaid invoices against Drill South, Enviro-Group, and International Fidelity pursuant

2

to the Miller Act and Alabama law.[1] Drill South then cross-claimed against International Fidelity and Enviro-Group. International Fidelity answered the cross-claim of Drill South and itself cross-claimed against Drill South and Enviro-Group. On February 20, 1997, Drill South filed a Motion for Default Judgment against Enviro-Group. In response to Drill South's Motion for Default Judgment, International Fidelity stated that it took no position on a default judgment against its principal Enviro-Group, provided that the default judgment was not deemed binding on International Fidelity. Enviro-Group failed to respond, and the district court entered default judgment against Enviro-Group in favor of Drill South on April 7, 1997. Several months after it entered default judgment against Enviro-Group and while International Fidelity and Drill South had cross motions for summary judgment pending, the district court concluded that International Fidelity, as surety for Enviro-Group, was bound by the default judgment against Enviro-Group, and that the pending cross motions for summary judgment were therefore moot. The district court entered Final Judgment against International Fidelity on September 5, 1997. On January 27, 1999, the district court granted Drill South's Motion for Attorneys' Fees and amended the September 5, 1997 Final Judgment to reflect the same. International Fidelity timely filed a notice of appeal from that Judgment, and Drill South timely

---

[1]On May 27, 1997, Miller Drilling's claims were dismissed due to a settlement.

3

filed a notice of cross-appeal. While that appeal was pending, International Fidelity filed a motion with the district court to set aside the judgment pursuant to Fed. R. Civ. P. 60(b)(4), arguing that the judgment was void for lack of jurisdiction. The district court denied the Rule 60(b)(4) motion on September 1, 1999, and International Fidelity timely filed a notice of appeal from that order as well. On November 24, 1999, this Court consolidated the two appeals.

On appeal, International Fidelity argues that the District Court erred by granting judgment in favor of Drill South solely on the basis that a default judgment had been entered in the same case on such claim against International Fidelity's principal, Enviro-Group. Next, International Fidelity argues that the district court erred in granting judgment against International Fidelity on the basis of the default judgment because the district court lacked personal jurisdiction over Enviro-Group. Finally, International Fidelity argues that the district court erred by granting Drill South an award of attorneys' fees and costs, and Drill South cross-appeals, challenging the amount of attorneys' fees to which the district court determined that it was entitled. For the reasons set forth more fully below, we find no error in the district court's orders of September 5, 1997, January 27, 1999, and September 1, 1999.

We turn first to International Fidelity's argument that it cannot be bound by the judgment against Enviro-Group because default judgments against a bond principal

are not binding on a co-defendant surety actively defending in the same action. Whether the district court properly held that International Fidelity was preclusively bound by the default judgment against its principal is a question of law, subject to plenary review. See McDonald v. Hillsborough County School Board, 821 F.2d 1563, 1564 (11th Cir. 1987). Substantial dispute exists in the law as to whether a default judgment rendered against a principal is binding upon the principal's surety. Nevertheless, the general rule that has emerged is that a surety is bound by any judgment against its principal, default or otherwise, when the surety had full knowledge of the action against the principal and an opportunity to defend. See Lake County ex rel. Baxley v. Massachusetts Bonding & Ins. Co., 75 F.2d 6, 8 (5th Cir. 1935)[2]("[w]here it appears that the judgment against the [principal] was obtained in a suit of which the surety had full knowledge, and which it had full opportunity to defend, the judgment therein is not only evidence, but conclusive evidence, against every defense except that of fraud and collusion in obtaining it."); United States ex rel. Vigilanti v. Pfeiffer-Neumeyer Const. Corp., 25 F. Supp. 403, 404 (E.D.N.Y. 1938).

---

[2]Under Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court is bound by cases decided by the former Fifth Circuit before October 1, 1981.

In this action, it is clear from the record that International Fidelity had full knowledge of the potential for the default judgment against Enviro-Group and possessed numerous opportunities to defend the ultimate judgment. The record is replete with instances in which the district court afforded International Fidelity both notice and opportunity to step in and defend the merits of Drill South's claims against Enviro-Group and the extent of its liability.[3] It is also clear to this Court that International Fidelity had the legal right to step in and defend Enviro-Group against the default judgment at every stage of the proceedings pursuant to its Agreement of Indemnity with Enviro-Group. Under the terms of the Agreement, International Fidelity was designated Enviro-Group's "attorney-in-fact", giving International Fidelity the "right to adjust, settle, or compromise any claim, demand, suit or

---

[3]After Drill South filed its Motion for Default Judgment against Enviro-Group, the district court ordered "any party wishing to be heard on the Motion" to submit a response. Despite the district court's order, International Fidelity chose not to defend Enviro-Group against the default judgment and offered no evidence on Enviro-Group's liability, apparently under the belief that such judgment would not be binding on it. Next, the district court held a hearing in April of 1997 for arguments on "the issues of the entry of default judgment against Enviro-Group, any damages arising therefrom, and whether such default judgment is binding on International Fidelity as a surety." International Fidelity appeared at the hearing and denied its liability for the default judgment, but failed to step in and defend the merits of the judgment or damages. The district court also accepted a brief from International Fidelity, addressing whether International Fidelity should be bound by the judgment against its principal. Finally, the district court provided International Fidelity yet another opportunity to defend against the binding effect of the default judgment when it allowed International Fidelity to argue the issue before the court at a motion docket on August 29, 1997.

judgment upon the [payment bond]." Agreement of Indemnity, ¶ 13.[4] We agree with the district court that because International Fidelity had the right, and therefore the opportunity, to defend Enviro-Group as its surety and attorney-in-fact, International Fidelity should not be permitted to stand back and allow a judgment to be taken setting the amount of recovery against its principal without similarly being bound by the judgment.[5]

To the extent that International Fidelity argues that it had no obligation to defend the action against Enviro-Group, we are not persuaded. We believe the issue is not whether the Agreement of Indemnity imposed an obligation on International

---

[4]The Agreement of Indemnity appoints International Fidelity as the attorney-in-fact for Enviro-Group as follows:

> [Enviro-Group] hereby irrevocably nominate[s], constitute[s], appoint[s] and designate[s] [International Fidelity] as their attorney-in-fact with the right, but not the obligation, . . . in the name of [Enviro-Group] to make, execute, and deliver any and all additional or other assignments, documents, or papers deemed necessary and proper by [International Fidelity] in order to give. . . the full protection intended to be herein given to [International Fidelity] under all other provisions of this Agreement. [Enviro-Group] hereby ratify[ies], and confirm[s] all acts and actions taken and done by [International Fidelity] as such attorney-in-fact.

Agreement of Indemnity at ¶ 18.

[5]Our decision that International Fidelity is bound by the default judgment against Enviro-Group is the same under Alabama substantive law. Under Alabama law, a surety is conclusively bound by a default judgment against a principal if it is a privy of the principal or if it is a party to the suit in which judgment is rendered. See Fireman's Ins. Co. v. McMillan, 29 Ala. 147, 167-68 (Ala. 1856).

Fidelity to defend Enviro-Group, but whether it conferred a right to defend. The law requires only that a surety have notice and an opportunity to defend before it is bound by a judgment against its principal. We believe International Fidelity had this right and opportunity, and simply chose, for whatever reason, not to exercise its right.[6]

International Fidelity argues, however, that when a surety and principal are sued in the same action, and the surety answers and defends on its own behalf, the surety is not bound by a default judgment entered against the surety's principal. Although we recognize the existence of authority supporting International Fidelity's position, those cases are not binding on this Court; nor do we find their reasoning persuasive. See United States ex. rel. Fidelity Nat. Bank v. Rundle, 107 F. 227, 229 (9th Cir. 1901); Pfeiffer-Neumeyer Const. Corp., 25 F. Supp. at 405 (principal's silence and failure to appear cannot be shown in evidence against sureties actively defending in same action); North Jersey Sav. and Loan Assn. v. Wright, Egan, & Assoc., No. 85-4211 January 13, 1987 (unpublished opinion) (E.D. Pa. 1987)(default judgment against principal is not binding on surety defending in same action); Gearhart v. Pierce Enterprises, Inc., 779 P.2d 93, 95 (Nev. 1989)(default judgment against principal not

---

[6]Contrary to International Fidelity's argument, the simple fact that International Fidelity had asserted a cross-claim against Enviro-Group does not affect International Fidelity's "right" to step in and defend Enviro-Group as its attorney-in-fact. We do not believe that there is anything unusual about an insurance company or surety defending a principal or insured against suits by third parties, while simultaneously maintaining an action against the insured or principal, or taking such action under a "reservation of rights."

8

binding on surety where surety was not responsible for principal's conduct causing default and had not assumed principal's legal defense, notwithstanding surety's participation in suit as principal's co-defendant).

We believe that the general rule that a surety is bound by a judgment entered against its principal when the surety had both notice and opportunity to defend applies whether the principal and surety are sued in the same action or in separate actions.[7] As was stated by the district court in its September 5, 1997 Memorandum of Opinion:

> It would be an anomaly to conclude that a surety *can* be held liable under the general rule for standing idly by while its principal suffers an adverse judgment when the judgment is rendered in an action where the surety is not a party, and in the same breath conclude that the surety *can* stand idly by, without liability, and allow a default judgment to be rendered against its principal merely because the surety was a co-defendant to the action. In the former case, the surety is afforded much less opportunity to defend its interests than in the latter, where it is already a party, has full knowledge of the proceedings, and can freely oppose the judgment against its principal.

---

[7]Other courts have reached this conclusion under similar facts. See First Mobile Home Corp. v. Little, 298 So. 2d 676, 682 (Miss. 1974)(surety bound by default judgment against principal when sued in same suit because had same right to defend as its principal); Massachusetts Bonding & Ins. Co. v. Central Finance Corp., 237 P.2d 1079 (Col. 1951)(default judgment against principal is conclusive on surety); Home Ins. Co. of New York v. Savage, 103 SW 2d 900, 901-02 (Mo. Ct. App. 1937); Charleston & W.C.RY. Co. v. Lassiter & Co., 179 SE 879, 881-82 (N.C. 1935).

Accordingly, we find no error in the district court's determination that International Fidelity is bound by the default judgment taken in the same action against its principal, Enviro-Group.[8]

We turn now to International Fidelity's argument that the  district court erred in granting judgment against International Fidelity on the basis of the default judgment against Enviro-Group because the district court lacked personal jurisdiction over Enviro-Group.  International Fidelity argues that Enviro-Group was never properly served in this action, and therefore the district court never obtained personal jurisdiction over Enviro-Group.  As such, International Fidelity believes that the default judgment entered against Enviro-Group is void and cannot serve as a basis to bind International Fidelity.[9]

---

[8]Moreover, we agree with the district court that the Supreme Court's holding in Frow v. De la Vega, 82 U.S. 552, 21 L.Ed. 60 (1872), is inapplicable to this case in light of the conclusion that International Fidelity is conclusively bound by the default judgment against Enviro-Group.  Frow held that where multiple defendants are jointly liable, it would be "incongruous" for judgment to be entered against a defaulting defendant prior to the decision on the merits as to the remaining defendants.  See id. at 554.  Nevertheless, Frow has been interpreted to apply only when there is a risk of inconsistent adjudications.  See In re Uranium Antitrust Litigation, 617 F.2d 1248, 1257-58 (7th Cir. 1980).  See also Wright, Miller, & Kane, Federal Practice and Procedure; Civil 2d § 2690 (1983-1997).  Because we have determined that International Fidelity was conclusively bound by the default judgment entered against its principal, there was no risk of inconsistent adjudications and the rationale behind Frow is not implicated.

[9]Although we do not decide the issue today, it is not entirely clear that International Fidelity has the right to raise the argument that the district court lacked personal jurisdiction over Enviro-Group.  Lack of personal jurisdiction is arguably a personal defense that can only be raised by the party over whom jurisdiction is lacking.  See LeRoy v. Great Western United Corp., 443 U.S. 173, 180, 99 S. Ct. 2710, 2715 (1979); Hardaway Co. v. Amwest Surety Ins.

10

The summons issued for Enviro-Group states that it is directed to: "Robert G. Woodward, Jr., President of Enviro-Group, Inc." Mr. Woodward received the summons via certified mail and accepted and signed for it in December 1996. International Fidelity complains that this amounted to service on Mr. Woodward in his individual capacity and is insufficient to confer personal jurisdiction over Enviro-Group. We disagree. Under both the Federal Rules and Alabama Rules of Civil Procedure, we believe the summons described above was sufficient to confer personal jurisdiction over Enviro-Group.[10]

The Federal Rules of Civil Procedure contemplate that a court may have personal jurisdiction over a defendant served despite imperfect service of process. See Sanderford v. Prudential Ins. Co. of America, 902 F.2d 897 (11th Cir. 1990). Thus, even a finding that the summons served upon Enviro-Group through Mr. Woodward was technically defective would not necessarily mean that the district court lacked personal jurisdiction over Enviro-Group or that the default judgment against Enviro-Group is void. If a summons is in substantial compliance with the Federal Rules and a defendant has not been prejudiced by a defect in the summons, a defendant waives

---

Co., 15 F.3d 172, 174 (11th Cir. 1994)(surety may assert all defenses that would be available to principal with the exception of personal defenses).

[10]Both the Alabama Rules of Civil Procedure and the Federal Rules of Civil Procedure contemplate service upon a corporation through its "officers" or "agents." See Fed. R. Civ. P. 4(h)(1); Ala. R. Civ. P. 4(c)(6).

11

the insufficiency of process defense by not asserting it prior to the entry of default judgment. See id. at 900. There is nothing in the record to suggest that either Enviro-Group or International Fidelity lacked notice that Drill South's claims were against Enviro-Group rather than Robert Woodward, or that either was in any way prejudiced by the allegedly "defective" summons.[11] As such, the district court did not err in concluding that Enviro-Group was served in a manner substantially complying with Fed. R. Civ. P 4 or in its decision that it had personal jurisdiction over Enviro-Group.

Contrary to International Fidelity's argument, the result is not different under the Alabama Rules of Civil Procedure. International Fidelity argues that service requirements under Alabama law are more stringent than the Federal Rules and that the district court in this matter improperly presumed that Robert Woodward was an agent of Enviro-Group who could accept service on behalf of the company.

The 1992 Committee Comments to Rule 4 of the Alabama Rules of Civil Procedure caution that no presumption of agency should be indulged in with respect to service and that "courts should be vigilant to protect the rights of defendants when default judgments are entered on the basis of service upon an agent of a defendant." In addition, the Comments provide that "the court should be satisfied that the person

---

[11]The summons at issue indicated that it was a cross-claim summons and was accompanied by a cross-claim which identified Enviro-Group, not Robert Woodward, as the cross-defendant. The case caption also identified Enviro-Group as the defendant. In addition, the summons warned that a default might be taken if Enviro-Group failed to appear.

upon whom service was attempted was in fact the authorized agent of the defendant before refusing to grant relief from a default judgment." See also Hoffman et al. v. Alabama Distillery & Feeding Co., 27 So. 485 (Ala. 1900)(indicating that under Alabama law, there must be some proof of proper connection between the individual served and the corporation in order to sustain a judgment against that corporation). We believe that the district court did properly satisfy itself that Robert Woodward was authorized to accept service on behalf of Enviro-Group. The district court accepted evidentiary submissions from the parties on the issue and ultimately determined that Mr. Woodward was an officer, agent, and owner of Enviro-Group at the time of service. The district court's determination that Robert Woodward could properly accept service on behalf of Enviro-Group is amply supported by the record and we find no error.[12]

Finally, we turn to the parties' arguments pertaining to attorneys' fees. International Fidelity argues that the district court erred in granting Drill South an

---

[12]Moreover, like the district court, we believe that International Fidelity's argument that service on Enviro-Group was improper and that no personal jurisdiction attached should have been raised long ago. International Fidelity knew or should have known of the alleged "defects" in the summons no later than February 18, 1997, when Drill South's Motion for Default Judgment, with a copy of the summons attached, was served on International Fidelity. Despite having received a copy of the summons in February 1997, International Fidelity did not raise its defective service argument until twenty-six months after the entry of default judgment against Enviro-Group; twenty-one months after the entry of final judgment against International Fidelity; and five months after entry of the amended final judgment.

award of fees and costs because Drill South did not plead its entitlement to fees in its cross-claim against International Fidelity.  Drill South cross-appeals, arguing that the district court properly awarded it fees, but should be required to recalculate the amount of fees due to the district court's use of an improper standard in determining the amount of fees to which Drill South was entitled, the district court's failure to consider International Fidelity's "Stalingrad Defense" tactics, and the district court's erroneous findings of fact concerning the reasonableness of the hours Drill South expended in this matter.

District courts have broad discretion in awarding attorneys' fees, and an award of such fees will normally be set aside only for abuse of discretion. See American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); In re Hillsborough Holdings Corp., 127 F.3d 1398, 1401 (11th Cir. 1997); ARP Films, Inc. v. Marvel Entertainment Group, Inc., 952 F.2d 643, 651 (2d Cir.1991); Lerman v. Flynt Distrib. Co., 789 F.2d 164, 166 (2d Cir.), cert. denied, 479 U.S. 932, 107 S. Ct. 404, 93 L.Ed.2d 357 (1986).  "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination or bases an award [or a denial] upon findings of fact that are clearly erroneous." United States v. Gilbert, 198 F.3d 1293, 1298 (11th Cir. 1999).

After considering the parties arguments and the record, we do not believe that the district court abused its discretion in its decision to award Drill South fees despite its apparent failure to plead its entitlement to fees in its cross-claim against International Fidelity. The pre-trial order in this action clearly stated Drill South's intent to recover attorneys' fees from International Fidelity.[13] See State Treasurer of the State of Michigan v. Barry, 168 F.3d 8, 9-10 (11th Cir. 1999)(pretrial order supercedes prior pleadings); Insurance Co. of North America v. M/V Ocean Lynx, 901 F.2d 934, 941 (11th Cir. 1990). Nor do we find that the district court erred in its determination of the proper amount of fees to be awarded to Drill South. Accordingly, we affirm the district court's decisions pertaining to attorneys' fees in all respects.

**AFFIRMED**

---

[13]Moreover, that Drill South did not specifically plead its entitlement to fees in its cross-claim against International Fidelity is not necessarily determinative. We have held under similar facts that a district court has discretion to award the prevailing party attorneys' fees pursuant to a contractual provision, despite that party's failure to plead fees in its pleadings. See Capital Asset Research Corp. v. Finnegan, 216 F.3d 1268, 1270-72 (citing Engel v. Teleprompter Corp., 732 F.2d 1238 (5th Cir. 1984). See also Klarman v. Santini, 503 F.2d 29, 36 (2d Cir. 1974)(rejecting argument that a party's failure to specifically request attorneys' fees in pleadings is in itself a bar to recovery), cert. denied, 419 U.S. 1110, 95 S. Ct. 785 (1975).